## COMMISSIONER OF INTERNAL REVENUE v. PROUTY.

### No. 3603.

Circuit Court of Appeals, First Circuit.

Nov. 1, 1940.

Loring W. Post, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Joseph M. Jones, all of Washington, D. C., on the brief), for Commissioner of Internal Revenue.

Allison L. Newton, of Boston, Mass. (Douglas L. Ley, of Boston, Mass., on the brief), for Olive H. Prouty.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

In 1923 Olive H. Prouty, the taxpayer herein, set up three trusts. Between 1923 and 1931 the grantor, by virtue of power reserved to her, made various amendments to the trust instruments. The Commissioner ruled that the gifts were not complete in 1931; that under Section 501 of the Revenue Act of 1932, 47 Stat. 245, as amended by Section 511 of the Revenue Act of 1934, 48 Stat. 758, 26 U.S.C.A. Int.Rev. Acts, pages 580, 769, gift taxes became due upon amendment of each of the trusts on January 2, 1935, whereby the grantor finally relinquished all reserved power to revoke or amend the trust instruments. Upon petition for redetermination of the deficiency, the Board of Tax Appeals held with the taxpayer that the gifts had been completed prior to the enactment of the gift tax in 1932, and decided that there was no deficiency in gift taxes for the year 1935. The correctness of this decision by the Board is now before us on petition for review.

After the amendments in 1931 each of the three trust instruments contained a provision reserving to the grantor a power to revoke or amend, with the written consent of her husband, Lewis I. Prouty, during his lifetime, and thereafter, alone. As a condition precedent to the exercise of this power in a given calendar year, the grantor had to serve upon the trustee, during the preceding year, a formal notification of intention to revoke or amend.

Section 501 (c) of the Revenue Act of 1932 provided:

"The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a transfer by the donor by gift of the property subject to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift."

This subsection was repealed in 1934, 48 Stat. 758, for the reason, as explained in the committee reports, that "the principle expressed in that section is now fundamentally part of the law by virtue of the Supreme Court's decision in the Guggenheim case. * *" H.Rep. 704, 73d Cong., 2d Sess. (1934), p. 40; Sen.Rep. 558, same session, p. 50. In Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, which arose under the gift tax of 1924, the Supreme Court, without the aid of specific language in that Act, had reached the result which was expressly provided for in Section 501 (c) of the 1932 Act. In view of this legislative history Treasury Regulations 79 (1936 ed.) quite properly provide, notwithstanding the repeal of Section 501 (c), as follows:

"Art. 3. Cessation of donor's dominion and control.—

"* * *

"As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to cause the beneficial title to be revested in himself, the gift is complete. But a transfer (in trust or otherwise), though passing both legal and beneficial title, is still in essence merely formal so long as there remains in the donor a power to cause the revesting of the beneficial title in himself, and the gift, from the standpoint of substance, remains incomplete during the existence of the power. A donor shall be considered as having the power to revest in himself the beneficial title to the property transferred if he has such power in conjunction with any person not having a substantial adverse interest in the disposition of the property or the income therefrom. A trustee, as such, is not a person having a substantial adverse interest in the disposition of the trust property or the income therefrom. The relinquishment or termination of the power, occurring otherwise than by the death of the donor (the statute being confined to transfers by living donors), is regarded as the event which completes the gift and causes the tax to apply. * * *"

If, therefore, Lewis Prouty is determined to be a person not having a substantial adverse interest in the disposition of the trust corpus or income therefrom, the gifts were not complete in 1931 and gift taxes accrued in 1935 upon the grantor's unqualified relinquishment of her power to revoke or amend.

We shall refer first to Trusts Nos. 2 and 3, because in them we think it clear that

Lewis did not have a substantial adverse interest as of 1931.

In Trust No. 2 the grantor declared herself trustee of certain securities, with direction to the trustee to pay out of the net income the sum of $2,500 a year to Lewis I. Prouty during his lifetime, "and to add the balance of the net income to the principal and invest it as a part thereof during the lifetime of Lewis I. Prouty, with full power and authority in the sole and uncontrolled discretion of said Olive Higgins Prouty as long as she shall be the Trustee hereunder from time to time to pay to said Lewis I. Prouty and said Jane Prouty [a daughter], or either of them, in such proportions as the said Trustee may see fit the whole or any part of the principal of the trust fund if said Trustee deems it necessary or advisable for the maintenance, support and welfare of said Lewis I. Prouty and said Jane Prouty or either of them. * * *" It was provided that Lewis would succeed as trustee if he outlived the grantor; but in that event Lewis as trustee would not be empowered to make any payments to himself, other than the annuity, though he could in his "sole and uncontrolled discretion" make payments of the whole or any part of the principal to Jane Prouty if he deemed it advisable for her maintenance, support and welfare. At Lewis' death the property was to pass to Jane, with various remainders over. The power in the grantor to amend or revoke the trust, with the consent of Lewis, has already been mentioned.

Trust No. 3 was the same as Trust No. 2, except that Richard Prouty, a son, was substituted for Jane.

■ So far as the annuity is concerned, the Commissioner conceded that an effective gift thereof in each trust had been made prior to the passage of the Revenue Act of 1932. Accordingly, in determining the deficiency, he subtracted the value of the annuities, calculated on the basis of Lewis' life expectancy, and subjected the remaining value of the corpus of each trust to the gift tax. This method of apportionment might be objected to on the ground that if the annuity constituted a substantial adverse interest, it was an interest in the whole of the corpus out of the net income of which the annuity was payable, so that the gift should be treated as having been completed in 1931 as to all the trust res. But such an interpretation would afford an obvious facility for tax evasion, particularly with respect to the grantor's income tax in the application of the comparable provisions of Section 166 dealing with revocable trusts.[1] To the extent that a proposed partial revocation would leave Lewis' annuity intact, he would have no substantial countervailing interest tending to induce him to withstand the grantor's wishes. We think that the Commissioner was justified in deducting the capital value of the annuity and in treating the transfer in 1935 upon relinquishment of the power as being a gift merely of the remainder of the corpus after such deduction. Therefore, in considering whether Lewis had a substantial adverse interest in Trusts Nos. 2 and 3, we may leave out of account the annuities to him provided in these trusts. Cf. Kaplan v. Commissioner, 1 Cir., 66 F.2d 401; Paul W. Litchfield v. Commissioner of Internal Revenue, 39 B.T.A. 1017.

■ The only other interest which Lewis had in the corpus of Trusts Nos. 2 and 3 was the possibility that, under the provision previously quoted, his wife, as trustee, might in her "sole and uncontrolled discretion" pay over to him such portions of the principal as she might deem advisable for his maintenance, support and welfare. But the main purpose of the trust was to accumulate the income during Lewis' lifetime, and the record does not suggest the existence of circumstances indicating any likelihood that Lewis would ever receive anything by virtue of this provision.

---

[1] Section 166 of the Revenue Act of 1932, 47 Stat. 221, 26 U.S.C.A. Int.Rev. Acts, page 543, provided as follows:

"Revocable Trusts

"Where at any time [during the taxable year] the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust [for such taxable year] shall be included in computing the net income of the grantor."

The amendment of this section by the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Code, § 166, merely struck out the portions indicated in brackets above but otherwise made no change.

Certainly Lewis, while receiving aggregate annuities of $7,500 from the three trusts, could never obtain a court decree compelling the trustee to give him something under this discretionary power. That such a remote and speculative possibility of gain does not constitute a "substantial adverse interest" was ruled by this court on quite similar facts in Fulham v. Commissioner, 1 Cir., 110 F.2d 916, 918.

Another point was stressed by the Board in connection with Trusts Nos. 2 and 3, namely, that in each case the corpus at the death of Lewis was to go to his children. "It is natural to assume," said the Board, "that his desire and concern for the support, maintenance, and welfare of his children after his death would prompt him to resist any effort on the part of the grantor of the trust to alter, amend or revoke that part of the trust so as to revest in her title to such property." No doubt this is an interest of a sort. But we think the phrase "substantial adverse interest," as it was used in Section 501 (c) of the Revenue Act of 1932 and as it is used in Sections 166 and 167, 26 U.S.C.A. Int.Rev. Acts, pages 543, 580, means a direct legal or equitable interest in the trust property, and not merely a sentimental or parental interest in seeing the trust fulfilled for the advantage of other beneficiaries. Loeb v. Commissioner, 2 Cir., 113 F.2d 664, 666.

Trust No. 1 presents a different situation. We may lay to one side the annuity of $2,500 payable to Lewis; and also the possibility that Lewis might receive something through the exercise by the grantor as trustee of her discretion to pay to Lewis such part of the principal as she might deem advisable for his maintenance, support and welfare. Under this trust instrument Lewis had, in addition, two important interests affecting the whole of the corpus, interests which were lacking in the other two trusts. (1) If he should outlive the grantor, the corpus was to pass at his death as he should by his last will direct and appoint.[2] The prospect of acquiring this power of disposition certainly would furnish a pecuniary motive, far from negligible, tending to induce Lewis to stand out against any desire of the grantor to revoke the trust. Cf. Curry v. McCanless, 307 U.S. 357, 371, 59 S.Ct. 900, 83 L. Ed. 1339. (2) If he should outlive the grantor, he would succeed as trustee and, as such trustee, would have full discretion to pay to himself the whole or any part of the principal should he deem it advisable for his own maintenance, support and welfare. In Cox v. Commissioner, 10 Cir., 110 F.2d 934, such a power held by a grantor-trustee was held to be so substantial as to amount in effect to a power in the grantor to revest in himself the corpus of the trust estate and hence to subject the grantor to an income tax under Section 166; this despite the fact that the power may have been technically a fiduciary one.

Examining these intimate family trusts, one must recognize an element of unreality in the inquiry whether a beneficiary's interest is substantially adverse to the grantor. The supposition is that, given a sufficient stake in the trust, the beneficiary is not likely to yield to a wish of the grantor to revoke the trust. In many cases the grantor may have full confidence in the compliant disposition of the member of the family he selects to share his power of revocation, even though such member is named as beneficiary of a handsome interest in the trust. The very fact that the grantor reserved a power to revoke indicates a mental reservation on his part as to the finality of the gift; and if the grantor wishes to hold on to a power of recapture, it stands to reason he will vest the veto power in someone whose acquiescence he can count on. Cf. Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 90, 56 S.Ct. 70, 80 L.Ed. 62. However, we cannot read into the gift tax, any more than into Sections 166 and 167, the proposition that a member of the grantor's immediate family can never be deemed to have "a substantial adverse interest." So far as the gift tax is concerned, it is fair enough to take the grantor at his word.

[2] This power of appointment was provided in an amendment made in 1929 to Article Second of the trust instrument. In form Lewis was given the power of appointment upon his death, without regard to whether he died before or after the grantor. But in the contingency of Lewis' predecease, the Commissioner interprets the trust instrument as empowering the grantor to nullify any testamentary appointment by exercising her power to revoke prior to actual payment of the principal to the beneficiaries designated in Lewis' will. This interpretation is disputed by the taxpayer. We assume, without deciding, that the Commissioner is right on this point.

As to the income tax, it might be rational for Congress to tax all family income as a unit. But as the law now stands—both gift tax and income tax—we must give weight to the formal rights conferred in the trust instrument in determining whether a given beneficiary has a substantial adverse interest, bearing in mind the admonition of Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 556, 84 L.Ed. 788, that "where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary * * *."

 The present case is on the border line, but considering the aggregate of Lewis' interests under the terms of Trust No. 1, we are not persuaded that the Board was in error in its conclusion that Lewis had a "substantial adverse interest." It is true that Lewis will have to outlive the grantor to reap the benefits, but in the normal vicissitudes of life the chance of his survival is substantial. Lewis has a contingent interest in the whole of the current income, for if the trustee does not pay it to him under her discretionary power, it must be added to the corpus and thus becomes subject to Lewis' testamentary power of appointment. A substantial chance of coming into a good thing may constitute a "substantial adverse interest"; especially where, as here, it is a chance to control the disposition of the entire corpus of a large estate. It is a chance one would not lightly relinquish. The interest need not be presently vested in possession and enjoyment. See Jane B. Shiverick v. Commissioner of Internal Revenue, 37 B.T.A. 454.

 The Commissioner further contends, however, that a gift is not complete even where the grantor's reserved power to revoke is subject to the veto of a person who does have a substantial adverse interest; and that therefore a gift tax became payable in 1935 when the grantor relinquished this power. See First National Bank of Birmingham v. United States, D. C., 25 F.Supp. 816. It is pointed out that when such a power so restricted is extinguished by death of the grantor, the corpus is treated as part of the gross estate of the grantor for purposes of the estate tax. Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62. And in Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S.Ct. 51, 56, 84 L.Ed. 20, the court said that the gift tax is supplementary to the estate tax; that the two are in pari materia and must be construed together; that: "There is nothing in the language of the statute, and our attention has not been directed to anything in its legislative history to suggest that Congress had any purpose to tax gifts before the donor had fully parted with his interest in the property given, or that the test of the completeness of the taxed gift was to be any different from that to be applied in determining whether the donor has retained an interest such that it becomes subject to the estate tax upon its extinguishment at death." Nevertheless, as the court pointed out (308 U.S. at page 45, 60 S.Ct. 51, 84 L.Ed. 20), the two taxes are not always mutually exclusive.[3] The estate tax expressly provides for taxation where at the time of the grantor's death he retained a power to revoke either "alone or in conjunction with any person." Section 302(d), Revenue Act of 1926, 44 Stat. 71, 26 U.S.C.A. Int.Rev.Acts, page 228. But Section 501 (c) of the 1932 gift tax provided that the tax should not apply to a transfer of property in trust where the power to revest the property in the donor was vested in the donor "either alone or in conjunction with any person not having a substantial adverse interest." This seems to imply that the gift tax applies where the power to revoke is retained in conjunction with a person who does have a substantial adverse interest. When Section 501 (c) was repealed in 1934, it was stated that the provision was unnecessary because the Guggenheim case had so established the law even without the aid of express provision. In the Guggenheim case the power to revoke was reserved in the grantor alone. Treasury Regulations 79, 1936 Ed., which we have quoted above have the same meaning as the now repealed Section 501 (c)

---

[3] Section 402(b) of the Revenue Act of 1932, 47 Stat. 245, 26 U.S.C.A. Int.Rev. Acts, page 578, provides:

"If a tax has been paid under Title III of this Act on a gift, and thereafter upon the death of the donor any amount in respect of such gift is required to be included in the value of the gross estate of the decedent for the purposes of this title, then there shall be credited against the tax imposed by section 401 of this Act the amount of the tax paid under such Title III with respect to so much of the property which constituted the gift as is included in the gross estate * * *."

and contain the same apparent implication that if the power to revoke is reserved in conjunction with a person having a substantial adverse interest, the donor is to be considered as having so parted with dominion as to render the gift complete. The Commissioner must have thought that this was so when he prepared the deficiency notice in the case at bar, for he deducted the value of the annuities to Lewis on the theory that as to them the gifts were complete in 1931.

In view of this legislative history we conclude that since Lewis had a substantial adverse interest in Trust No. 1 as of 1931, the gift was complete at that time, despite the power of revocation reserved to the grantor in conjunction with Lewis. As a result, Trust No. 1 escapes both the gift tax and the estate tax. However, our decision is not a precedent endangering the revenue. The tax is avoided here only because the gift was made before the gift tax was enacted. These family trusts, created since 1932, will inevitably be subject to the gift tax, or the estate tax, or in some instances, both.[4] The Commissioner's argument, advanced to meet the exigencies of the case at bar, if accepted and applied in future cases, would only result in postponing the incidence of the tax.

We have not overlooked an additional argument advanced by the Commissioner. Leaving aside the question whether Lewis had a substantial adverse interest in Trust No. 1, the Commissioner contends that the "bundle of rights and powers" retained by Mrs. Prouty as of 1931 was such that she remained in substance the owner of the corpus, and that the income of the trust was then taxable to her under Section 22(a), Revenue Act 1934, 26 U.S.C.A. Int.Rev.Acts, page 669, by the doctrine of Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788; that the gift being regarded as incomplete for purposes of the income tax should be similarly regarded for purposes of the gift tax. The answer is twofold. In the first place, it is far from clear that the premise is correct as to the applicability of Helvering v. Clifford. Cf. Commissioner v. Branch, 1 Cir., 114 F.2d 985, decided by this court October 23, 1940. Second, the gift tax does not seem to be so closely integrated with the income tax that decisions like the Clifford case extending the applicability of Section 22 (a) to the grantor of a trust, must nec-essarily be read as holding that no gift tax was payable upon the creation of the trust. It may be frankly recognized, however, that the interrelation of the income, estate, and gift taxes presents many puzzling problems which deserve the attention of Congress.

The decision of the Board of Tax Appeals is affirmed as to Trust No. 1 and reversed as to Trusts Nos. 2 and 3; and the case is remanded to the Board for further proceedings not inconsistent with this opinion.