## FLOOD v. UNITED STATES.

### MOIR v. SAME.

### FLOOD v. SAME.
Civil Actions Nos. 909, 1149, 1227.

District Court, D. Massachusetts.
April 6, 1942.

———◇———

Nichols, Boyer & Morton and J. A. Boyer, all of Boston, Mass., for plaintiff Flood.

Nichols, Boyer & Morton and Joseph A. Boyer, all of Boston, Mass., for plaintiff Moir.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Eugene E. Angevine, Sp. Assts. to Atty. Gen., for defendant.

FORD, District Judge.

These are related actions, consolidated for trial (Rule 42, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c), to recover federal income taxes. For essential purposes they involve the same facts and questions of law. In No. 909 the plaintiff Flood seeks to recover a tax for the year 1936 in the amount of $3,500. In No. 1227 the same plaintiff seeks to recover a tax for 1937 of $3,110. In No. 1149 the plaintiff Moir, duly appointed executor, seeks recovery of a tax for the year 1938 in the amount of $5,976.49 on the income of John Moir, deceased.

There was included in the gross income of each of these taxpayers during the tax years in issue a part, proportional to each taxpayer's original contribution, of the income of a fund known as the Chase and Sanborn Pension Fund.

This Fund was established in 1929 by these taxpayers and their six former partners, pursuant to an agreement made among the partners in anticipation of the sale of the partnership business. The partnership of Chase & Sanborn, of which these taxpayers were members, had been engaged in the tea and coffee business since 1878. The firm had in 1929, when its business was sold to Standard Brands, Inc., between four and five hundred employees. Some of these employees had served the firm long and faithfully, and by reason of age or ill health had become partially or completely incapacitated. Such employees had received pensions or allowances of extra compensation through the voluntary action of the partners in the period prior to the sale of the business. When the sale to Standard Brands, Inc., was being contemplated, the partners wished to continue to provide for such employees and former employees of the firm, because they believed the success of the firm was in great measure due to the efforts of these employees and Standard Brands, Inc., declined to undertake any responsibility. Therefore, the partners decided to contribute a certain portion of the price paid by Standard Brands, Inc., to be held in trust for the purpose of paying pensions or allowances to former employees of Chase & Sanborn. The evidence further showed that having created the trust, the contributors felt a strong moral obligation to make the payments provided for in the indenture.

A trust agreement was executed July 16, 1929, by all the partners, who are referred to in the instrument as the contributors. The Day Trust Company, the decedent Moir, and William T. Rich were named as trustees.

· The trust instrument provides that:

"Whereas the Contributors have been heretofore associated together as co-partners doing business as Chase & Sanborn, and have sold said business to Standard Brands, Inc.; and

"Whereas the Contributors desire to create a pension fund to be used for the benefit of former employees of Chase & Sanborn (hereinafter called the Benefici-

aries) as a reward for their faithful service in the employ of Chase & Sanborn and in order, in some instances, to ameliorate their condition in life; such benefit to accrue immediately in some cases and to be deferred in others:

"Now therefore the Contributors, each in consideration of the contribution of every other of them, and other good and valuable consideration, respectively sell, assign, transfer and deliver to the Trustees the property described and set opposite their respective names in the schedule hereto annexed marked 'Schedule A', to hold, manage, invest and reinvest the same and any additions that may from time to time be made thereto, in trust for the following purposes:

"1. Except as hereinafter provided, to pay from the income to the Beneficiaries named in the schedule hereto annexed marked 'Schedule B', or use and apply for their benefit, the monthly payments set opposite their respective names.

"2. Except as hereinafter provided, to pay from the income to such of the Beneficiaries named in the schedule hereto annexed marked 'Schedule C' as the Trustees shall from time to time determine, or use and apply for their benefit the monthly payments set opposite their respective names.

"3. To pay to the Contributors annually, in proportion to their contributions, or to their legal representatives, such part of the income as the Trustees in their uncontrolled discretion shall determine to be not required for the purposes hereinbefore set forth.

"4. To pay from the principal to or for the benefit of the Beneficiaries from time to time, such sums as may be necessary for the purposes set forth in Paragraphs 1 and 2 hereof (if the income shall be insufficient for such purposes) until the aggregate amount of principal so expended in that year and prior years shall equal the aggregate amount of income paid in that year and prior years to Contributors as provided in Paragraph 3 hereof, and thereafter to use for the purposes set forth in Paragraphs 1 and 2 hereof such further parts of the principal as the Trustees shall by unanimous vote determine.

"5. To pay over and distribute from time to time to the Contributors, in proportion to their contributions, or to their legal representatives, such part or parts of the principal as the Trustees in their uncon-

trolled discretion shall determine to be no longer required for the purposes of the trust.

"6. Upon the death of the survivor of the Beneficiaries named in said Schedules B and C, to pay to the Contributors in proportion to their contributions, or to their legal representatives, the principal as it shall then be, with any accrued income, and the trust shall thereupon terminate."

Then followed other sections which gave the trustees extremely broad powers to manage and deal with the property of the trust, made provision for filling vacancies among the trustees with preference given to the contributors, and set out other administrative provisions.

"13. The persons who shall receive the benefits of the pensions hereunder shall have no right, title or interests of any kind or nature in and to said trust or the income thereof or any portion of the same until such sums as may be paid to them actually come into their hands. The Trustees at any time may temporarily or permanently discontinue payments to any Beneficiary or Beneficiaries, provided however that any periodical payment once determined to be paid to any Beneficiary shall be continued without change during the life of such Beneficiary, unless the then Trustees shall by unanimous vote otherwise determine. The interest of any Beneficiary hereunder, either as to income or principal, shall not be anticipated, alienated or in any other manner assigned by such Beneficiary, and shall not be subject to any legal process, bankruptcy proceedings, or the interference or control of creditors or others.

\* \* \*

"15. This agreement may be modified or amended at any time by the unanimous vote of the Trustees for the time being, signified by their written signatures to such amendment, except that they shall have no power to modify the provisions herein made for distribution of the principal. Additional persons who will receive benefits hereunder may be added at any time or times within three years from the date hereof by unanimous vote of the Trustees, provided that such additional persons shall have been employees of Chase & Sanborn prior to the date hereof."

The amounts provided for in the schedules for payments to individual pensioners were determined with reference mainly to the type of services which had been performed and the pay previously earned, the more valuable and higher salaried men receiving larger pensions. Names were added to the lists in subsequent years, in some cases to provide for employees who were retired by Standard Brands, Inc., and in other cases to provide for payments to widows of deceased employees.

The firm of Chase & Sanborn was not formally dissolved after the sale of the business, but it did no further merchandising. It continued to exist only for purposes of cleaning up expenses connected with the sale, e. g., attorneys' fees and transfer taxes, to adjust certain liabilities which Standard Brands, Inc., did not assume, and to liquidate assets not taken over by the purchaser.

The amount included in taxpayer Flood's gross income return for 1936 (No. 909) as a result of charging him with the receipt of 14.08% of the income of the Fund was $6,280.96. Flood had originally contributed 14.08% of the corpus of the fund, and that had been the proportion of his interest in the partnership. The application of the same formula resulted in the inclusion of $6,476.49 in the same taxpayer's gross income for 1937. The sum of $10,962.87 was included in the gross income of the taxpayer Moir for that period of the taxable year 1938 that is involved here. This sum was 36.6% of the net income of the trust attributable to that period, a percentage equal to that of the taxpayer's original contribution to the corpus and to his interest in the partnership business.

Most of the income of the trust in the years in issue was actually paid to the beneficiaries. The amount so paid in 1936 was $41,480, of which $5,840.38 was attributable to the plaintiff Flood's share of the income. In 1937, the amount paid was $37,992.58, of which $5,349.34 was attributable to the taxpayer's share of the income. In 1938, $10,337.74 of the amount paid out was attributable to the income resulting from the contribution of the taxpayer Moir.

During the periods involved, the Day Street Trust Company, John E. Moir, deceased, and William T. Rich, were trustees.

The plaintiffs urged two alternative grounds for relief: (1) The trust here is not a revocable trust within the meaning of Sections 166 and 167 of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int. Rev.Code, §§ 166, 167, because the power

of revocation is vested in a person having a substantial adverse interest in the disposition of the income of the corpus of the trust; and (2) that each taxpayer is entitled to a deduction from his gross income from his proportionate share of payments made from the trust to the pensioners as an ordinary and necessary business expense paid by him in the taxable year as reasonable compensation for services actually rendered in carrying on his business.

Applicable provisions of the Revenue Act of 1936 will be found in the margin.[1] Applicable provisions of the 1938 Act are identical.

Under the provisions of the trust instrument income may be distributed to the grantors. The trustees may cut down or abolish payments to beneficiaries, who have no vested right in advance of distribution. The trustees may alter, or amend, which power could be used to give the grantors the entire income.

There is no doubt that under Section 167 the income of this trust is taxable to the grantors, unless some trustee has a substantial interest adverse to the grantors.

The taxpayers contend that the contributors, Moir and Rich, serving as trustees, regarded that each had assumed a moral obligation to continue payments which the plaintiffs contend constitute a "substantial adverse interest".

In the Revenue Acts of 1924 (Section 219(g), 26 U.S.C.A. Int.Rev.Acts, page 31, cf. Reinecke v. Smith et al., 289 U.S. 172, 53 S.Ct. 570, 77 L.Ed. 1109) and 1928 (Sections 166 and 167), 26 U.S.C.A. Int.Rev.Acts, page 407, the word "beneficiary" was used in place of the phrase "person having a substantial adverse interest". Necessarily a beneficiary would have to have some property interest. The plaintiffs argue that the phrase "substantial adverse interest" now used in the statute since the amendment of the 1928 statute in 1932 (Sections 166, 167),

---

[1] Revenue Act of 1936, c. 690, 49 Stat. 1648:

"§ 23. Deductions from gross income

"In computing net income there shall be allowed as deductions:

"(a) Expenses. (1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity. * * * *"

"§ 166. Revocable trusts

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom,

then the income of such part of the trust shall be included in computing the net income of the grantor."

"§ 167. Income for benefit of grantor

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

"(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o) relating to the so-called 'charitable contribution' deduction);

then such part of the income of the trust shall be included in computing the net income of the grantor.

"(b) As used in this section the term 'in the discretion of the grantor' means 'in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question.'" 26 U.S.C.A. Int.Rev. Code, §§ 23(a), 166, 167.

26 U.S.C. Int.Rev.Acts, page 543, got away from the limited meaning of property interest and that by the amendment Congress intended that the phrase can now be interpreted to include not only a property interest but also such an interest as is present here, i. e., a recognition of a moral obligation. I cannot agree with this contention. The history of the statute hardly justifies any such conclusion. By inserting the phrase "person having a substantial adverse interest" Congress did not intend to liberalize the provisions with respect to revocable trusts. On the contrary, Congress sought to tighten rather than loosen the reins. See Senate Report No. 665, Congressional Record, Vol. 75, Part 9, p. 10094. I can find nothing in the history of the legislation that warrants me in determining that there was any intention on the part of Congress to recognize any other interest than a property interest as an adverse interest. And the decided cases seem to bear this out. The Circuit Court of Appeals for this Circuit in the case of Commissioner of Internal Revenue v. Prouty, 115 F.2d 331, at page 335, 133 A.L.R. 977, stated: "But we think the phrase 'substantial adverse interest,' * * * means a direct legal or equitable interest in the trust property, and not merely a sentimental or parental interest in seeing the trust fulfilled for the advantage of other beneficiaries". Cf. Altmaier v. Commissioner of Internal Revenue, 6 Cir., 116 F.2d 162; Cox v. Commissioner of Internal Revenue, 10 Cir., 110 F.2d 934; Fulham v. Commissioner of Internal Revenue, 1 Cir., 110 F.2d 916; Morton v. Commissioner of Internal Revenue, 7 Cir., 109 F.2d 47. Cf. Reinecke v. Smith et al., supra, re bare legal interest of trustee. We have no legal or equitable interest in this case; in fact, all we have is a sentimental interest. Sincere and laudable though the desire of these trustees is to fulfill their obligation, yet here we are construing tax laws as Congress wrote them and no matter how commendable the act of the taxpayer is, this court is compelled to construe the statutes in accord with the purpose and intention of Congress in enacting them. In doing this, I cannot conclude there is here "an adverse interest" within the definition which the courts have accepted.

Also, in this case, it must be considered that while the grantor-trustees may have had an interest in fulfilling moral obligations, they also had a strong common financial interest with the other grantors. The substantiality of an interest must be determined in the light of the presence of conflicting interests. Cf. Commissioner of Internal Revenue v. Caspersen, 3 Cir., 119 F.2d 94.

It seems clear here, from a practical standpoint, that the grantors, or contributors, have substantially retained a mastery over the trust. It does not seem as though the adverse interest claimed affected that control to any substantial extent. It is not reasonable to suppose that if the grantors wanted, for some good economic reason we shall assume, to repossess themselves of the corpus, the moral obligation involved would be substantial enough to prevent such a happening. Hence, it can hardly be said that there is here a "substantial" interest sufficient to satisfy the terms of the statute.

The plaintiffs' second contention is to the effect that they should be allowed to deduct the amounts actually paid to the pensioners as "ordinary and necessary expenses paid or incurred during the taxable year in carrying on * * * business". Section 23. It is probably true that the nature of these payments is such that they would be deductible from gross income as ordinary and necessary expenses if the plaintiffs were engaged in "carrying on any trade or business" during the year these payments were paid or incurred. Cf. Lucas v. Ox Fibre Brush Co., 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733; Noel v. Parrott, 4 Cir., 15 F.2d 669; Treasury Regulations, 103, Sec. 19.23(a) 9. But the difficulty here is that the payments involved in these cases were both paid and incurred in taxable years during which the taxpayers were not engaged in business.

It is true that in applying language similar to Section 23 the courts have held that a loss resulting from former transactions entered into in connection with a business carried on by the taxpayer was deductible in the year paid, although the taxpayer was no longer engaged in that business. Burnet v. Marston, 61 App.D.C. 91, 57 F.2d 611. In Burrows v. Commissioner of Internal Revenue, 38 B.T.A. 236, the Board of Tax Appeals held that a doctor, retired from practice throughout the year in issue, might deduct sums paid for

expenses of his business which he had incurred in an earlier year while he was still active. The plaintiffs, in urging that these cases are decisive of the issues here, overlook an important distinction. The expenses incurred in these cases were expenses of the business carried on by the taxpayer at the time they were incurred. No legal obligation to make the payments in this case was incurred during the time the taxpayers were engaged in business. No case has been called to our attention where the deduction was allowed and the expense was not paid or incurred while the taxpayer was carrying on business. Cf. Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 217, 218, 61 S.Ct. 475, 85 L.Ed. 783; Deputy v. Du Pont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416; Mertens, Law of Federal Income Taxation (1939 Cum.Supp.) Sec. 23.06. In the view that a reasonable interpretation of the words of the statute demands that a deductible expense be paid or incurred in carrying on a trade or business, and the payments sought to be deducted here were neither paid or incurred under those conditions in this case, the plaintiffs cannot recover on this ground.

Judgment for the defendant in each case, with costs.