## HIGGINS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3755.

Circuit Court of Appeals, First Circuit.

June 2, 1942.

Lawrence E. Green, of Boston, Mass. (Raymond B. Roberts and George E. Ray, both of Boston, Mass., of counsel), for petitioner for review.

Helen R. Carloss, Sp. Asst. to Atty. Gen., Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Asst. Attys. Gen., and J. P. Wenchel and John M. Morawski, both of Washington, D. C., for Commissioner.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

Aldus C. Higgins, the taxpayer herein, created two trusts in 1920, one for the benefit of his daughter Elizabeth and her issue, the other for the benefit of his son Milton and his issue. On March 10, 1938, the taxpayer by formal instrument relinquished certain powers reserved to himself as settlor in each trust. The Commissioner ruled that the relinquishment of these powers in 1938 constituted gifts of the whole corpus of each trust fund. The Board of Tax Appeals sustained the Commissioner, and determined a deficiency in gift tax for the year 1938 in the sum of $283,362.65. The taxpayer now petitions for review of this decision of the Board.

We shall set forth the facts only with relation to the trust for Elizabeth since, in the view we take, there is no material variation between the two trusts.

The taxpayer declared himself trustee of 662 shares of the capital stock of the Norton Company for the benefit of his daughter Elizabeth, her children and the issue of any such child or children. The trust was to continue until the death of Elizabeth, and thereafter until every child of Elizabeth should have reached the age of 21 years or died. At the termination of the trust the principal was to be distributed pro rata among the then surviving children of Elizabeth and the then surviving issue of any deceased child or children by right of representation.[1] There was, however, the possibility of an earlier final distribution of the whole or any part of the trust fund pursuant to certain powers enumerated in the trust instrument and hereinafter to be described.

Mr. Higgins reserved to himself as settlor "full power and authority to appoint to any beneficiary the whole or any part of the principal of the trust fund". This power could be exercised by will or by deed inter vivos and might be so employed as to effectuate immediate "payment and delivery of that portion of the trust fund" so appointed. The settlor also reserved to himself power by will or by deed "to modify the terms of this instrument either as to the powers of the trustees with respect to investments or as to their powers with respect to the distribution of income or principal among the beneficiaries herein named or described prior to the termination of the trust". Also the settlor reserved power to appoint additional trustees, to remove any trustee or trustees, to fill vacancies among the trustees, "or he may refrain from appointing trustees to such places, and the number of trustees shall be augmented or reduced accordingly". In his capacity as trustee Mr. Higgins was given by the trust instrument sweeping powers of management of the trust funds. The trustees were empowered either (a) to accumulate the income, (b) to "apply the same in any way for the support, comfort and education, either in my own household or elsewhere, or otherwise to the benefit of the beneficiaries or any of them", or (c) to "pay over the same either in money or otherwise to the beneficiaries or any of them". The trustees were also given full power and authority to apply to the care, support, education, or

---

[1] If at the termination of the trust there should then be a total failure of issue of the said Elizabeth, it was provided that the trust fund should revert to the settlor or his estate. In 1935 the taxpayer assigned this possibility of reverter to various charities.

otherwise to the benefit of any beneficiary, so much of the principal as they should deem necessary to the health, comfort, education or otherwise to the best interests of any such beneficiary.

Such in substance was the situation just prior to March 10, 1938. On that day Mr. Higgins resigned as trustee and appointed Katharine H. Riley to act as trustee in his stead. On the same day, by virtue of his reserved powers, Mr. Higgins executed a formal instrument amending the provisions of the trust so as to broaden somewhat the discretionary powers of the trustees with reference to the disposition of income and principal;[2] and by the same instrument he released and relinquished "all powers reserved or given to me by any and all the provisions of said trust instrument".

As we noted in Commissioner v. Prouty, 1 Cir., 1940, 115 F.2d 331, 133 A.L.R. 977, the interrelation of the income, estate and gift taxes presents many perplexities; without further aid from Congress it is perhaps impossible for the courts to work out a complete integration of the three taxes.

When a trust is created the first tax problem in point of time is whether the transfer is subject to the gift tax. It might have been logical for Congress in the gift tax provisions to describe with particularity those factors determinative of the question whether a completed gift has been made. If the transfer in trust were determined to be incomplete at that stage and not subject to the gift tax then the settlor would remain subject to an income tax on the net income from the trust fund, and the trust property, upon the settlor's death, would still be subject to the estate tax. If on the other hand the transfer in trust were determined to be a completed gift, the gift tax would then be payable, the income from the trust fund would not thereafter be taxable to the settlor, nor would the trust property be included in the settlor's gross estate at his death. In this way there would have been an integration of the three taxes, with no overlapping.

The statutory development took quite a different course, however. The income and estate taxes appeared on the books first, and their complete integration is negatived by express statutory provisions. In other words, certain types of transfer result in relieving the transferor from the income tax, yet at his death the property which had been transferred during his lifetime is nevertheless included in his gross estate for estate tax purposes; and vice versa. For instance, when property is transferred by outright gift in contemplation of death, the donor no longer pays an income tax thereon, but such property is included in the donor's gross estate upon his death. Likewise if a donor conveys property to trustees for the benefit of others, reserving a power to revoke in conjunction with one having a substantial adverse interest in the trust, the income is not thereafter taxable to the donor under I.R.C. § 166, 26 U.S.C.A.Int.Rev.Code, § 166, but upon his death the corpus will be included in his gross estate. Helvering v. City Bank Farmers Trust Co., 1935, 296 U. S. 85, 56 S.Ct. 70, 80 L.Ed. 62. On the other hand, where the settlor of a trust created for the benefit of others reserves in himself no power of revocation but vests such power in some other person who has no adverse interest, the grantor remains subject to the income tax (I.R.C. § 166), but apparently escapes the estate tax.[3] Helvering

---

[2] The provision as thus amended read: "Until the termination of the trust, the trustees may in their discretion pay all or any part of the net income, accumulations, and principal of the fund in such proportions and amounts as they in the exercise of their discretion deem proper to and among said Elizabeth B. Chapin and her children and issue living at the time of each payment, with power in their discretion to omit from participation in any such benefit any one or more of the persons among whom they have power to distribute. At the termination of the trust, the trustees if they in their discretion deem it advisable, may increase or decrease the shares of one or more of the persons entitled to distribution by such amounts as the trustees in the exercise of their discretion may deem appropriate in order to adjust any inequalities in distribution of income, accumulations, or principal previously made to any one or more of them or any of their ancestors or descendants. Any income accumulated from time to time may, in the discretion of the trustees, be added to principal; and shall upon the termination of the trust be added to principal. The discretion herein given to the trustees shall be absolute and uncontrolled, and not subject to review by any court."

[3] See Helvering v. St. Louis Trust Co., 1935, 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239; Paul, Federal Estate and Gift Taxation (1942) § 7.12. In 1936 the House Committee on Ways

v. Eubank, 1940, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81, is another instance of a transfer where the donor must continue paying an income tax, but where the value of the property transferred will not be included in the donor's gross estate at his death.

The gift tax enactment, which came later, broadly imposed a tax upon "the transfer * * * of property by gift". Revenue Act of 1932, § 501(a), 47 Stat. 169, I.R.C. § 1000, 26 U.S.C.A.Int.Rev.Code, § 1000. This tax was conceived of by Congress as supplementary in character, designed to buttress both the estate tax and the income tax. The committee reports of both House and Senate stated:

"The gift tax will supplement both the estate tax and the income tax. It will tend to reduce the incentive to make gifts in order that distribution of future income from the donated property may be to a number of persons with the result that the taxes imposed by the higher brackets of the income tax law are avoided. It will also tend to discourage transfers for the purpose of avoiding the estate tax." [4]

It has been suggested that "the gift tax should be imposed as soon as the donor or grantor ceases to bear the burden of the income tax on the income derived from the property transferred". Warren, "Correlation of Gift and Estate Taxes", 55 Harv.L. Rev. 1, 23. It would then result that in many instances an estate tax would be payable on property which had theretofore borne a gift tax when transferred by the decedent during his lifetime. But this overlapping had been contemplated by Congress, and any resulting hardship has at least been partially mitigated by the provision allowing a credit for gift taxes paid in computing the estate tax. I.R.C. § 813, 26 U.S.C.A.Int. Rev.Code, § 813. This suggested approach emphasizes the gift tax as supplementary to the income tax. The gift tax was also designed to discourage transfers for the purpose of avoiding the estate tax; hence with equal force it could be argued that the gift tax should be imposed upon any donative transfer of such nature that the affected property will thereafter not be included in the donor's gross estate for estate tax purposes. It would then result that in many instances a gift tax would be imposed though the donor still bears the burden of the income tax on the income derived from the property transferred. [5] Since the estate tax lacks complete integration with the income tax, it is obvious that the courts in construing the gift tax so as to achieve a dual purpose of supplementing the estate and the income tax cannot achieve a complete integration of the three taxes.

In Sanford's Estate v. Commissioner, 1939, 308 U.S. 39, page 47, 60 S.Ct. 51, page 57, 84 L.Ed. 20, the Supreme Court recognized that "One purpose of the gift tax was to prevent or compensate for the loss of surtax upon income where large estates are split up by gifts to numerous donees". Yet the court put its main emphasis upon the integration of the gift tax with the estate tax, saying that "The two are in pari materia and must be construed together" (308 U.S. page 44, 60 S.Ct. page 56, 84 L.Ed. 20) as providing "a unified scheme of taxation of gifts whether made inter vivos or at death". 308 U.S. page 48, 60 S.Ct. page 58, 84 L.Ed. 20. "Gift taxes", the court said (308 U.S. page 47, 60 S.Ct. page 57, 84 L.Ed. 20), "will not be imposed on transactions which fall short of being completed gifts". The test of completeness of the transfer for

and Means reported out H.R. 12793, 74th Cong., 2d Sess., which bill, in § 206, contained a provision amending § 302(d) of the Revenue Act of 1926 so as to provide specifically that the property in such a case should be included in the gross estate. H.R.Rep. No. 2818, 74th Cong., 2d Sess., pp. 9–10. This bill did not pass the House, but some of its provisions were inserted by the Conference Committee into H.R. 12395 which later became the Revenue Act of 1936. The proposed amendment in § 206 was not adopted, however, though other changes were made in § 302(d) by the Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Acts, page 229.

[4] H.R.Rep. No. 708, 72d Cong., 1st Sess. (1932) p. 28; Sen.Rep. No. 665, 72d Cong., 1st Sess. (1932) p. 40. To the same effect as to the short-lived gift tax enacted in 1924, see 65 Cong.Rec. (1924) pp. 3120, 3172, 3173, 8095, 8096.

[5] The settlor of a trust remains subject to the income tax on the property transferred where he vests a power of revocation solely in some third person who has no adverse interest. I.R.C. § 166. But it is clear from the legislative history of the gift tax that Congress intended the gift tax to apply to such a transfer. See Paul, Federal Estate and Gift Taxation (1942) § 17.11. Since such a transfer takes the property out of the estate tax, the gift tax in this instance performs its function of supplementing the estate tax.

purposes of the gift tax is no different "from that to be applied in determining whether the donor has retained an interest such that it becomes subject to the estate tax upon its extinguishment at death". 308 U.S. page 44, 60 S.Ct. page 56, 84 L.Ed. 20. Further, "a retention of control over the disposition of the trust property, whether for the benefit of the donor or others, renders the gift incomplete until the power is relinquished whether in life or at death". 308 U.S page 43, 61 S.Ct. page 56, 84 L.Ed. 20. Hence the court held that a gift in trust with reservation of power in the donor to alter the disposition of the property in any way no beneficial to himself, is incomplete and does not become subject to the gift tax so long as the donor retains that power. This conclusion was arrived at even though, by virtue of the income tax provisions, the income from the trust property might have been no longer taxable to the donor. 308 U.S. pages 47, 48, 60 S.Ct. 51, 84 L.Ed. 20.[6]

We do not understand that the court in the Sanford case intended to establish the sweeping rule that a transfer inter vivos is never subject to the gift tax if notwithstanding such transfer the property is still includible in the donor's gross estate for purposes of the estate tax. See Commissioner v. Marshall, 2 Cir., 1942, 125 F.2d 943, 947, 948; Helvering, Commissioner, v. Robinette, 3 Cir., March 23, 1942, 129 F.2d 832. In several instances, for reasons of policy, Congress has imposed an estate tax upon property of which the decedent had during his lifetime made a completed transfer by way of gift. One such instance, which the court specifically mentioned in the Sanford case, 308 U.S. page 45, 60 S.Ct. 51, 84 L.Ed. 20, is a gift in contemplation of death. Another such instance was presented in Commissioner v. Prouty, 1 Cir., 1940, 115 F.2d 331, where the donor-settlor of a trust reserved the power of revocation in conjunction with a person having a substantial adverse interest. Such a transfer has been recognized by the Supreme Court as a completed gift inter vivos. Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 346, 347, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397; Helvering v. City Bank Farmers Trust Co., 1935, 296 U.S. 85, 90, 56 S.Ct. 70, 80 L.

Ed. 62. As we pointed out in the Prouty case, the legislative history of the gift tax indicates clearly that such a transfer in trust is subject to the gift tax, even though the property so transferred is still includible in the donor's gross estate for purposes of the estate tax See Paul, Federal Estate and Gift Taxation (1942) § 17.09; Warren, supra, pp. 31–32. Another example of the same sort is an inter vivos transfer in trust, reserving the net income for life to the settlor, with an irrevocable remainder to another. This is no doubt a completed gift of the remainder interest, as the Supreme Court has recognized, May v. Heiner, 1930, 281 U.S. 238, 244, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; hence a gift tax would be payable thereon (see Helvering v. Robinette, 3 Cir., March 23, 1942, 129 F.2d 832), even though, by amendmen of the estate tax the whole of the trust property is includible in the donor's gross estate. I.R.C. § 811(c) 26 U.S.C.A.Int.Rev.Code, § 811(c). See Paul, op. cit. § 17.12. The same is true of an irrevocable transfer in trust with the mere possibility of reverter to the grantor. Here it has been held that the grantor must pay a gift tax upon the value of the intermediate interests thereby created. Commissioner v. McLean, 5 Cir., April 23, 1942, 127 F.2d 942; Commissioner v. Marshall, 2 Cir., 1942, 125 F.2d 943. But the property is includible in the grantor's gross estate for purposes of the estate tax. Helvering v. Hallock, 1940, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368. See Warren, supra, pp. 24–31.

■■ But where the question arising in gift tax litigation is whether there has been a completed gift inter vivos, we are bound by the Sanford case to correlate the gift tax with the estate tax, without regard to what happens under the income tax; and if the gift is incomplete from the viewpoint of the estate tax it must be regarded as incomplete for purposes of the gift tax. In the case at bar the donor has given up all power to get the property back, but he has retained in himself as settlor of the trust complete power, not only to control the disposition of the income among the named or described beneficiaries, but also to command at any time the distribution of the whole or any part of the principal to any or all of

---

[6] Even if the transfer in trust in the Sanford situation would result in the loss of income tax revenue, the imposition of a gift tax would in large measure be ineffective as a discouragement to such transfers or as compensation for the loss of surtax revenue, in view of the gift tax credit allowed in computing the estate tax.

such beneficiaries as he may see fit. There is no doubt that the retention of such a power renders the gift incomplete for purposes of the estate tax. I.R.C. § 811(c); Chickering v. Commissioner, 1 Cir., 1941, 118 F.2d 254, certiorari denied 314 U.S. 636, 62 S.Ct. 70, 86 L.Ed. ——. "A gift to a trustee reserving to the donor the economic benefit of the trust or the power of its disposition, involves no taxable gift. It is only upon the surrender by the donor of the benefit or power reserved to himself that a taxable gift occurs. * * *" Helvering v. Hutchings, 1941, 312 U.S. 393, 396, 61 S.Ct. 653, 654, 85 L.Ed. 909. Such a gift is certainly not complete from the viewpoints of the several beneficiaries, any one of whom may at any time be excluded at the donor's whim from participation in the benefit. Nor do we imagine that a donor would ordinarily regard his gift as complete while he still retains power to decide who shall get the property and to fix the date of distribution.

■ The taxpayer urges that the Sanford case is distinguishable because there the donor reserved power to alter the disposition of the property in any way not beneficial to himself, whereas in the case at bar the donor is restricted to a narrower class of beneficiaries. We do not think that this distinction is controlling. Once it was decided in the Sanford case and in Rasquin v. Humphreys, 1939, 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77, that the reservation of a power to alter the disposition of the property prevents the imposition of a gift tax at the time the trust is created, even though the donor has irrevocably conveyed the beneficial interest out of himself, it does not seem to matter how wide or narrow the range of potential donees may be, so long as the donor, within that range, retains full power to control the disposition of the property. [7]

■ It is further argued by the taxpayer that the relinquishment by Mr. Higgins of his reserved powers on March 10, 1938, cannot be held to be a "transfer * * * of property by gift" within the meaning of the Act because after such relinquishment no one of the beneficiaries was any more assured of getting anything than he was before; that is, though the donor thereby gave up his own reserved power to affect the disposition of the income and principal, he by the same instrument vested a similar power in the trustees. [8] But the gift tax is imposed upon the transfer by the donor, not upon the receipt by the donees. Where the gift was originally incomplete because the donor retained the strings in his own hands, the gift becomes complete, from the standpoint of the donor, when he cuts the strings by relinquishing his reserved powers. If a donor, reserving no powers in himself, irrevocably transfers property to third party trustees, for the benefit of named beneficiaries, but vests in the trustees full power to allocate income and principal among the named beneficiaries, no one could doubt that the donor would be subject to a gift tax upon creation of the trust. Yet the individual beneficiaries in the case supposed would be no more assured of getting anything than were the beneficiaries in the case at bar after the donor's powers were relinquished in 1938. This demonstrates that certainty or uncertainty of benefit from the standpoint of the donees is not the test of the incidence of the gift tax.

■ At the time of the relinquishment by Mr. Higgins of his reserved powers, Treasury Regulations 79 (1936 ed.) read as follows:

"Art. 3. Cessation of donor's dominion and control.—* * *

"As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to cause the beneficial title to be vested in himself, the gift is complete * * *. A donor shall be considered as having the power to revest in himself the beneficial title to the property transferred if he has such power in conjunction with any person not having a substantial adverse interest in the disposition of the property or the income therefrom * * *. The relinquishment or termination of the power, occurring otherwise than by the death of the donor (the statute being confined to transfers by living donors), is regarded as the event which completes the gift and causes the tax to apply."

If this regulation had been a valid interpretation of the law it would have con-

---

[7] If there is an irrevocable gift of an intervening life estate, the donor would be subject to a gift tax on the value of such estate, even though the gift is incomplete as to the principal owing to the reservation of a power in the donor to alter the disposition of the remainder interest. In the case at bar, however, the reserved powers affected both income and principal.

[8] See footnote 2, supra.

trolled the present case; the gift would have been regarded as complete prior to the taxable year 1938, for the grantor had reserved no power to revest beneficial title in himself. But in Rasquin v. Humphreys, 1939, 308 U.S. 54, at page 56, 60 S.Ct. 60, at page 62, 84 L.Ed. 77, the court said: "Whatever validity the amended regulation of 1936 may have in its prospective operation, we think it is so plainly in conflict with the statute as to preclude its application retroactively so as to subject to tax such transfer as was made by the creation of the trust in 1934." If the regulation as revised in 1936 is in conflict with the statute, we do not see how it can be given application prospectively any more than retroactively. See Paul, op. cit. § 17.07, p. 1149. Furthermore, the taxpayer is really contending here for a retroactive application of the 1936 regulation, for he is asking us to hold, by force of such regulation, that the gift was complete in 1920, when he created the trust reserving in himself no power to regain the beneficial title. On September 19, 1940, in deference to the Sanford and Humphreys cases, Article 3, Regulations 79 (1936 ed.), was amended by T.D. 5010, 1940-2 Cum.Bull. 293-295, to read:

"As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change the disposition thereof, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over the disposition thereof, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case * * *.

"A gift is incomplete in every instance where a donor reserves the power to revest the beneficial title to the property in himself. A gift is also incomplete where and to the extent that a reserved power gives the donor the right to name new beneficiaries or to change the interests of the beneficiaries as between themselves * * *.

"The relinquishment or termination of a power to change the disposition of the transferred property, occurring otherwise than by the death of the donor (the statute being confined to transfers by living donors), is regarded as the event which completes the gift and causes the tax to apply * * *."

The regulation as thus amended in 1940 gives an interpretation of the Act in conformity with the holdings and reasoning in the Sanford and Humphreys cases. In deference to those authorities we should have been obliged to give the same interpretation to the Act, even without the aid of the 1940 amended regulation. See Manhattan General Equipment Co. v. Commissioner, 1936, 297 U.S. 129, 134, 135, 56 S.Ct. 397, 80 L.Ed. 528. The Board was right in ruling that the relinquishment by Mr. Higgins in 1938 of his reserved powers constituted taxable gifts of the whole corpus of each trust fund now in question.

The decision of the Board of Tax Appeals is affirmed.