ORRIN G. WOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92489. Promulgated November 14, 1939.

*Lawrence E. Green, Esq.*, for the petitioner.
*James T. Haslam, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding is for the redetermination of a gift tax deficiency of $2,543.54 for 1935. In determining the deficiency the respondent has included in petitioner's gift tax return for 1935 the "interpolated terminal reserve value" of certain insurance policies on petitioner's life which in a prior year the petitioner had conveyed to a trust, reserving the power during his lifetime to alter, amend, or revoke the trust. This power was relinquished by the petitioner on December 31, 1935, giving rise to respondent's determination of the gift tax liability in respect of the policies.

By an amendment to his answer filed in this proceeding the respondent alleges that there should be included in petitioner's gift tax return for 1935 a further amount of $257,594.75 representing the value on December 31, 1935, of certain securities which the petitioner conveyed in trust on December 29, 1919, with a power reserved in the trustees to alter or amend the trust, subject, however, to petitioner's right of veto as to any change in the beneficial interests, which right the petitioner relinquished on December 31, 1935. Respondent claims an increase in the deficiency resulting therefrom.

Further issues raised by the pleadings have been settled by the stipulation that petitioner is entitled to the specific exemption of $50,000 for the year 1935, instead of $40,000 allowed in the deficiency notice, and that petitioner is entitled to an exclusion for the year 1935 of $5,000 instead of $3,452.53 allowed in the deficiency notice with respect to the trust dated December 29, 1919, and a further exclusion of $5,000 with respect to the trust created January 14, 1929.

On December 29, 1919, petitioner conveyed to his wife, Cecile Thomson Wood, and two other persons, as trustees, certain securities, the income from which was to be paid to Cecile Thomson Wood for life and upon her death the remainder of the trust property was to be paid to or held in further trust for the benefit of petitioner's children or their issue. The trust instrument provided in material part as follows:

SECOND: * * * Said trustees may in their unrestricted discretion, anything to the contrary herein notwithstanding, at any time or from time to time pay over any part or parts of the principal of said trust fund to or for the benefit of said Cecile Thomson Wood during her lifetime, upon her request in writing, for any purpose which the trustees in the exercise of their unrestricted discretion approve, * * *

* * * * * * *

FOURTH: This instrument may be amended at any time or from time to time by the concurrent action of all the trustees for the time being and of all persons at the time of full age and legal capacity to whom or for whose education, maintenance and support all or any part of the net income is payable, except that

no amendment shall be made inconsistent with the provisions of Article First unless during the lifetime of said Orrin G. Wood and with his concurrence in writing. * * *

Prior to 1935 there were several amendments to the trust instrument by the trustees which are not here material. By an amendment dated February 26, 1935, petitioner was named a trustee to fill a vacancy caused by the retirement of one of the original trustees.

By written instrument executed December 31, 1935, by the trustees, Cecile Thomson Wood, Orrin G. Wood (the petitioner), and Keith McLeod, and by Cecile Thomson Wood as beneficiary, the trust instrument was further amended as follows:

B. We hereby strike out the provisions of Article Fourth of the original trust instrument and insert in lieu thereof the following:

This instrument may be amended at any time or from time to time by the concurrent action of all the trustees for the time being and all persons at the time of full age and legal capacity to whom or for whose education, maintenance and support all or any part of the net income is payable except that no amendment shall be made which shall vest in, revest in or cause to be paid to ORRIN G. WOOD any part of the corpus or income of the trust fund, or to give to ORRIN G. WOOD any benefit of the trust fund, direct or indirect. Any amendment shall be by instrument in writing and under seal, which shall be recorded wherever this instrument may by law be required to be recorded. No such amendment shall have effect as against any bona fide purchaser for value relying upon this instrument who has no notice of such amendment.

*       *       *       *       *       *       *

(2) ORRIN G. WOOD hereby releases and relinquishes any power given to him by Article Fourth of the original declaration of trust to prevent any amendment being made.

On the same date, December 31, 1935, the State Street Trust Co. of Boston, Massachusetts, was named as trustee to succeed the petitioner, who resigned.

The securities held by the trustees on December 31, 1935, under the trust instrument of December 29, 1919, as amended, had a value on that date of $230,679.13, inclusive of accrued interest in the amount of $1,036.68 and exclusive of certain shares of stock of the Brown Paper Mills, Inc., which the petitioner transferred to the trust on February 6, 1935. Petitioner reported these shares in his gift tax return for 1935 at a value of $1,164 but the respondent valued them in his deficiency notice at $3,880. The value of this stock at the date of the gift is at issue in this proceeding.

Respondent's contentions are that the above amendment to the trust instrument made December 31, 1935, constituted a completed gift in that it was a relinquishment by the petitioner of his sole power to prevent further amendments to the trust and in that it expressly prohibited any future amendment which might benefit the petitioner. The gift tax imposed by section 501 of the Revenue Act of 1932

is upon transfers by gift during the calendar year. There can be no doubt that the transfer of the securities by the petitioner to the trustees on December 29, 1919, was a valid transfer and constituted a completed gift unless the power reserved by the petitioner prevented the vesting of complete beneficial title in the donees. The power reserved by the petitioner was the power, during his lifetime, to veto any change that the trustees might make in the beneficial interests provided for in the original trust instrument. The petitioner himself had no power whatever to alter, amend, or revoke the trust. These powers were lodged in the trustees. Petitioner did serve as one of the three trustees for a short period in 1935 and during that period shared with the other two trustees the powers to amend the trust instrument, but he had no sole power at any time to alter, change, or revoke the trust. Moreover, under the provision of article fourth above, the trust could not be amended at any time except with the consent of Cecile Thomson Wood, who was not only a trustee, but was also a beneficiary to whom all of the net income of the trust was payable during her lifetime. As to the petitioner, the securities passed out of his ownership and beyond his control in 1919 when they were transferred to the trustees. Petitioner's reserved power to veto any change made by the trustees in the beneficial interests of the trust was not the equivalent of a power in the petitioner himself to change or alter the trust.

The respondent argues that the interest of Cecile Thomson Wood as a life beneficiary of the trust was not adverse to the interest of the petitioner in the corpus of the trust. This contention, we think, is unsound. The trustees had it within their power, upon the request in writing of Cecile Thomson Wood, to have distributed to her the principal of the trust. Furthermore, an interest in the income of a trust is, perforce, an interest in the corpus of a trust from whence flows the income. *Irwin* v. *Gavit*, 268 U. S. 161; *Jane B. Shiverick*, 37 B. T. A. 454; *Sophia P. O. Morton*, 38 B. T. A. 419; *Paul W. Litchfield*, 39 B. T. A. 1017. In *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, the Court said:

* * * Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute.

We think that the gift of the securities here was complete with their transfer by the petitioner to the trustees on December 29, 1919. In any event, we do not think that there was any completed transfer of the trust property by gift in 1935 merely by reason of petitioner's relinquishment of his right during his lifetime to veto any change made by the trustees in the beneficial interests of the trust.

On February 6, 1935, petitioner transferred to the trust created on December 29, 1919, 388 shares of the common stock of the Brown Paper Mills, Inc. He reported a gift of those shares in his gift tax return for 1935 at a value of $3 per share, or a total value of $1,164. The respondent has determined that the value of this stock was $10 per share, or $3,880 for the 388 shares.

The Brown Paper Mills, Inc., is engaged in manufacturing various types of craft paper at Monroe, Louisiana. Its stock is not listed and is held principally by the Brown family. The common stock has no par value. During 1934 and 1935 the stock was quoted in the Standard Stock Service as having a "bid" price of from $2.50 to $3 per share and an "offering" price of from $4 to $5 per share. The corporation's net earnings in 1934, after payment of taxes, interest, and dividends on preferred stock, amounted to approximately $5.80 per share of common stock. Such earnings for 1933 amounted to about 50 cents per share of common stock while for 1932, 1931, and 1930 there were deficits of between $2 and $4 per share.

On the evidence before us we determine that the value of the common stock of the Brown Paper Mills, Inc., on February 6, 1935, was $5 per share.

By a trust indenture dated January 14, 1929, the petitioner transferred to his wife, Cecile Thomson Wood, Hermann F. Clark, and Keith McLeod, as trustees, all of his rights and interests, except the right to disability payments, in 18 policies of insurance on his life. During petitioner's life the trustees were to pay the income from such trust properties to petitioner's wife, or, in their discretion, add a part of all of such income to the corpus. After petitioner's death the trust fund was to be divided into two parts, one of which was to be held for the benefit of petitioner's wife for life, with remainder over to or for the benefit of petitioner's surviving children or their issue. The other part, or both parts if petitioner's wife should predecease him, was to be distributed to or held for the benefit of petitioner's surviving children or their issue. By article seventh of the trust instrument petitioner reserved to himself during his lifetime the right:

D. To change and alter any or all of the trusts herein set forth and declare new trusts of the property in any way or manner. No exercise of this power shall exhaust it. It may, however, be released, extinguished, or restricted by a like instrument so signed and delivered by me.

By article eighth a similar power to change or alter the trust, after petitioner's death, was vested in a committee of five consisting of the three named trustees and two other persons, or their successors. The power was exercisable by any three of the committee of five.

On December 31, 1935, the petitioner executed a written instrument by which he relinquished the power reserved unto himself, during his

lifetime, to change or alter the trust as set forth in article seventh and conferred such powers on the committee of five named in article eighth.

The petitioner did not in 1935 or any prior year report any gift in respect of the transfer of his interests in the insurance policies held by the trustees under the trust instrument of January 14, 1929. In determining the deficiency herein the respondent has included such policies in petitioner's gift tax return for 1935 at a valuation of $112,907.41, representing the "interpolated terminal reserve value" at December 31, 1935.

It is stipulated that the aggregate cash surrender value of the policies in question at December 31, 1935, was $111,088.80.

Petitioner contends, first, that he is not liable for any gift tax by reason of the relinquishment in 1935 of his power to change or alter the beneficial interests in the trust created on January 14, 1929, because after such relinquishment the power to change or alter continued in the committee of five and could be exercised by any three of them without the concurrence of Cecile Thomson Wood, the only one of the committee who had any "adverse" interest in the trust property.

Petitioner concedes in his brief, however, that under the decisions of *Hesslein* v. *Hoey* (C. C. A., 2d Cir.), 91 Fed. (2d) 954; certiorari denied, 302 U. S. 756; *Sanford* v. *Commissioner* (C. C. A., 3d Cir.), 103 Fed. (2d) 81; (certiorari granted, May 15, 1939) ; and *Harriet W. Rosenau*, 37 B. T. A. 468, "it seems as if the action taken on December 31, 1935, with reference to the trust under Indenture dated January 14, 1929, constitutes a taxable gift."

In *Hesslein* v. *Hoey*, *supra*, the court said :

* * * We are to determine whether Congress has indicated its legislative intention to impose a gift tax upon a transfer in trust when the settlor divests himself of all beneficial interest in the property transferred but reserves the power to alter the disposition of the property in any way he may from time to time see fit, save only that the alteration must not revest any interest in himself or his estate. This restriction prevents the power reserved from being as absolute as that considered in *Burnet* v. *Guggenheim, supra*, but the power is nevertheless broad enough to enable the donor, subject only to the exception stated, to make a complete revision of all he has done. Such a reservation of power, if it is cut off by the settlor's death, requires that the corpus of the trust be subjected to an estate tax. *Porter* v. *Commissioner*, 288 U. S. 436, at page 443, 53 S. Ct. 451, 453, 77 L. Ed. 880 where the court said that, so far as concerns the estate tax, "there is no difference in principle between a transfer subject to such changes and one that is revocable."

We think this is equally true so far as concerns the gift tax. When the donor reserves power to change the beneficiaries at will, whether the reservation be phrased as a power to revoke or as a power to alter in any manner not beneficial to the donor or his estate, nothing has been done to give assurance that any part of the principal will ever be received by the named donees. * *. *

Upon authority of the cases cited we hold that petitioner's relinquishment of his right to change or alter the beneficial interest in the trust properties on December 31, 1935, constituted a gift of the value of such properties on that date.

Petitioner further contends, however, that in any event the value of the insurance policies held by the trustees at December 31, 1935, was not their "interpolated terminal reserve value" of $112,907.41 as determined by the respondent, but was the cash surrender value of the policies which was $111,088.80.

It is not explained just what is meant by the term "interpolated terminal reserve value" or what method the respondent used in his valuation. However, the argument made by the respondent on this point in his brief is that "the value of life insurance policies is to be determined by the cost to purchase a similar contract."

In *Ernest A. Cronin*, 37 B. T. A. 914, we accepted the cash surrender value of life insurance policies as representing the best evidence of their fair market value, rejecting the Commissioner's valuation based on the cost of a new, like policy. The *Cronin* case was followed in *Mary H. Haines*, 37 B. T. A. 1013; affd., *Commissioner* v. *Haines* (C. C. A., 3d Cir.), 104 Fed. (2d) 854; and *Elizabeth S. Kirk et al., Executors*, 39 B. T. A. 902.

In *Commissioner* v. *Haines, supra*, the court pointed out that at the time the gift of the policies was made in 1934 the Commissioner's regulations then in force (article 2 (5) of Regulations 79, 1932, 1934, and 1935 editions) provided for their valuation for gift tax purposes on the basis of their "net cash surrender value." These provisions of the regulations were in force at the date of the gift of the policies under consideration in the instant case.

Respondent relies upon *Ryerson* v. *United States*, 28 Fed. Supp. 265, where the United States District Court for the Northern District of Illinois held that the cost of a new similar policy at a given date was the criterion of the value for gift tax purposes of an insurance policy. With all due respect for the opinion of the court in that case, we adhere to the view expressed in the *Cronin* case and other cases cited above and hold that the value of the policies in question at the time of their assignment was their cash surrender value on that date.

*Decision will be entered under Rule 50.*