ALDUS C. HIGGINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 101542.  Promulgated July 31, 1941.

*Lawrence E. Green, Esq.*, for the petitioner.
*W. Herdman Schwatka, Esq.*, and *Edward L. Updike, Esq.*, for the respondent.

##### OPINION.

BLACK: This proceeding involves a gift tax deficiency of $299,103.47, determined by the respondent against petitioner for the calendar year 1938.

On March 15, 1939, petitioner filed with the collector of internal revenue for the district of Massachusetts a gift tax return for the calendar year 1938. In this return he did not report any gift tax liability, but in lieu thereof made the following statement:

On March 10, 1938, amendments were made in Higgins Trust #2 and Higgins Trust #3. Copies of said trust instruments, including the said amendments, are

filed with this return. I do not consider that said amendments constitute taxable gifts but am reporting the facts for determination by the Commissioner. This return is filed under protest to avoid any penalty.

The deficiency here involved is due primarily to the respondent's determination that petitioner's release and relinquishment on March 10, 1938, of all the powers reserved by him in Higgins Trust #2 and Higgins Trust #3, which trusts petitioner had created on July 9, 1920, had the effect of completing the gifts of the properties placed in trust so as to subject such transfers of property by gift to the gift tax imposed by section 501 of the Revenue Act of 1932, as amended. Among other things, the respondent determined that the value of the property transferred to Higgins Trust #2 on the date of gift, March 10, 1938, was $722,834.39; that the value of the property transferred to Higgins Trust #3 on the date of gift, March 10, 1938, was $751,068.32; that the net gifts for preceding years were $119,103.82; and that the tax on net gifts for preceding years was $9,635.74. Petitioner assigned four errors, (a) to (d), inclusive. Assignment of errors (c) and (d) were settled by stipulation, and effect will be given thereto under Rule 50. The assignments of error remaining for our consideration are as follows:

(a) The Commissioner erroneously determined that an amendment made by the petitioner on March 10, 1938 in Higgins Trust #2 constituted a taxable gift by the petitioner on that date.

(b) The Commissioner erroneously determined that an amendment made by the petitioner on March 10, 1938 in Higgins Trust #3 constituted a taxable gift by the petitioner on that date.

On January 26, 1940, petitioner, without waiving any rights and before any assessment, made a payment of $285,000 on account to the collector of internal revenue with respect to any gift tax liability which might be found to be due after hearing, in order to stop the running of interest in the event that the Board determines a gift tax to have been due.

The facts were stipulated. We adopt the stipulation as our findings of fact and will set forth herein only those facts that are necessary for an understanding of assignment of errors (a) and (b).

Petitioner is an individual and resides at Worcester, Massachusetts. He was born in 1872.

Elizabeth B. Angell, sometimes called Elizabeth B. Higgins and sometimes called Elizabeth B. Chapin, petitioner's daughter, was born in 1900, and has two children, Richard Chapin, born in 1923, and Aldus Higgins Chapin, born in 1930, all of whom are living.

Milton P. Higgins, petitioner's son, was born in 1903, and has two children, Milton P. Higgins, 3rd, born in 1938, and Prentiss Coonley Higgins, born in 1939, all of whom are living.

On July 9, 1920, petitioner created two trusts designated Higgins Trust #2 and Higgins Trust #3. Both trusts were originally identical, except that Higgins Trust #2 was created for the benefit of petitioner's daughter Elizabeth, her children and their issue, and Higgins Trust #3 was created for the benefit of petitioner's son Milton, his children and their issue. Each trust provided that unless sooner terminated by distribution to the beneficiaries it should continue until the death of petitioner's respective child and until every child of such respective child should reach 21 or die, at which time the principal should be distributed among the surviving children of such respective child and their issue, and upon the total failure of issue of such respective child "the trust fund shall thereafter be held for the sole benefit of myself, my heirs, executors, administrators and assigns." In each trust the trustees had discretion to accumulate the income, or to apply it in any way for the support, comfort, and education of the beneficiaries or any of them, or to pay it over to the beneficiaries or any of them.

Petitioner's only interest in either of the trusts as originally drawn, except for the powers which he reserved and which will be more fully hereinafter described, was a bare possibility of reverter if petitioner should survive his respective child and all the descendants therefrom before the time fixed for termination. On November 22, 1935, petitioner assigned all his said interest, either vested or contingent, except reserved powers, in Higgins Trust #2 to designated charities; and on March 10, 1938, petitioner assigned all his said interest, either vested or contingent, except reserved powers, in Higgins Trust #3 to his son Milton.

As originally drawn petitioner retained three sets of powers in each trust, the release of which by amendment on March 10, 1938, the respondent has determined to constitute taxable gifts of the properties held by the two trusts. By article 2 he reserved power to remove trustees and to appoint successor and additional trustees. By article 6 (a):

I hereby reserve to myself full power and authority to appoint to any beneficiary the whole or any part of the principal of the trust fund. This power may be exercised by will, or by a written instrument signed and sealed by me and acknowledged in the manner prescribed for the acknowledgement of deeds of real estate and delivered before my death to the trustees hereunder, or—so long as I shall be the sole trustee under this instrument—by the delivery or payment to any beneficiary for the time being of the whole or part of the principal of the trust fund. * * *

Article 8 of each trust provided:

8. MODIFICATION OF TRUST: I hereby reserve to myself the power, by will or by a written instrument signed and sealed by me and acknowledged in the manner prescribed by law for the acknowledgment of deeds of real estate, to

modify the terms of this instrument either as to the powers of the trustees with respect to investments or as to their powers with respect to the distribution of income or principal among the beneficiaries herein named or described prior to the termination of the trust.

On November 18, 1937, petitioner, in accordance with the power reserved in article 2 of Higgins Trust #2, appointed Ruth H. Tucker to be cotrustee with him. On March 10, 1938, petitioner resigned as trustee of Higgins Trust #2, and appointed Katharine H. Riley to act as trustee in his stead.

On August 20, 1935, petitioner modified paragraph (a) of article 6 of Higgins Trust #3 by striking out that article and inserting in lieu thereof the following:

I hereby reserve to myself the power from time to time during the life of my son, Milton P. Higgins, to appoint to him the whole or any part of the principal of the trust fund and after his death the power to appoint to his children and issue by right of representation the whole or any part of the trust fund. Such appointment may be made from time to time. This power may be exercised by any written instrument signed and sealed by me and acknowledged in the manner prescribed for the acknowledgment of deeds of real estate and delivered before my death to the trustees hereunder, or—so long as I shall be the sole trustee under this instrument—by the delivery or payment to any beneficiary for the time being of the whole or part of the principal of the trust fund. * * *

On November 22, 1935, petitioner, in accordance with the power reserved in article 2 of Higgins Trust #3, appointed his son Milton to be cotrustee with him during his life. On November 18, 1937, petitioner appointed Ruth H. Tucker to be cotrustee with him and his son of Higgins Trust #3. On March 10, 1938, petitioner resigned as trustee of Higgins Trust #3.

By an amendment to each trust dated March 10, 1938, petitioner modified the trust instruments with respect to the trustees' power as to distribution of income and principal so as to permit the trustees to make payments of income and principal until the termination of the trusts to and among the named beneficiaries as they in their discretion might see fit, with power to omit any one or more of the beneficiaries in making such payments. By this amendment petitioner also released and relinquished all powers reserved or given to him by any and all of the provisions of both trusts as amended. These provisions are identical in the case of both trusts (except as to the names of the respective beneficiaries of each trust), and in the case of Higgins Trust #3, they read as follows:

In accordance with the powers given me in said trust instrument, I hereby strike out Article 5 and paragraphs (b) and (c) of Article 6 of the original trust instrument as amended, and provide in lieu thereof as follows:

Until the termination of the trust, the trustees may in their discretion pay all or any part of the net income, accumulations, and principal of the fund

in such proportions and amounts as they in the exercise of their discretion deem proper to and among said MILTON P. HIGGINS and his children and issue living at the time of each payment, with power in their discretion to omit from participation in any such benefit any one or more of the persons among whom they have power to distribute. At the termination of the trust, the trustees if they in their discretion deem it advisable, may increase or decrease the shares of one or more of the persons entitled to distribution by such amounts as the trustees in the exercise of their discretion may deem appropriate in order to adjust any inequalities in distributions of income, accumulations, or principal previously made to any one or more of them or any of their ancestors or descendants. Any income accumulated from time to time may, in the discretion of the trustees, be added to principal; and shall upon the termination of the trust be added to principal. The discretion herein given to the trustees shall be absolute and uncontrolled, and not subject to review by any court.

I release and relinquish all powers reserved or given to me by any and all of the provisions of said trust instrument and all modifications thereof and amendments thereto. Without limiting the generality of the foregoing, I release and relinquish all powers reserved or given to me by Article 2, by paragraph (a) of Article 6, and by Article 8 of the trust instrument as amended.

The respondent determined that by these amendments of March 10, 1938, petitioner made a gift of the entire value of the property under each of the trust agreements upon which a gift tax is imposed by section 501 (a) and (b) of the Revenue Act of 1932. As further authority for his determination the respondent relies upon *Sanford's Estate* v. *Commissioner*, 308 U. S. 39, and article 3 of Regulations 79 (1936 Edition) as amended by Treasury Decision 5010, Cumulative Bulletin 1940-2, p. 293. The material provisions of T. D. 5010 are set out in the margin.[1]

[1] Article 3 of Regulations 79, 1936 edition * * * is hereby amended by striking out the second and third paragraphs thereof reading as follows:

As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to cause the beneficial title to be revested in himself, the gift is complete. But a transfer (in trust or otherwise), though passing both legal and beneficial title, is still in essence merely formal so long as there remains in the donor a power to cause the revesting of the beneficial title in himself, and the gift, from the standpoint of substance, remains incomplete during the existence of the power. * * *

and substituting in lieu thereof the following:

As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change the disposition thereof, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over the disposition thereof, the gift may be wholly incomplete, or may be partially complete and partially incomplete, depending upon all the facts in the particular case. Accordingly, in every case of a transfer of property subject to a reserved power, the terms of the power must be examined and their scope determined.

A gift is incomplete in every instance where a donor reserves the power to revest the beneficial title to the property in himself. A gift is also incomplete where and to the extent that a reserved power gives the donor the right to name new beneficiaries or to change the interests of the beneficiaries as between themselves. * * *

The relinquishment or termination of a power to change the disposition of the transferred property, occurring otherwise than by the death of the donor (the statute being confined to transfers by living donors), is regarded as the event which completes the gift and causes the tax to apply. * * *

Petitioner contends that article 3 of Regulations 79 (1936 Edition) as it existed on March 10, 1938, which was prior to T. D. 5010 (approved September 19, 1940) is decisive of the issues here involved; that under such regulations the gifts made to the trusts in 1920 were completed gifts at that time and hence there were no gifts in 1938, when petitioner relinquished his limited reserved powers. Petitioner also contends that if the transfers were not complete prior to the release of said powers in 1938, they were no more complete after the release than they were before.

We agree with the respondent's determination. It is our opinion that the question presented by assignments of errors (a) and (b) is controlled by *Sanford's Estate* v. *Commissioner, supra,* and *Rasquin* v. *Humphreys,* 308 U. S. 54. Cf. *Orrin G. Wood,* 40 B. T. A. 905; *Estate of Giles W. Mead,* 41 B. T. A. 424; petition for review to Ninth Circuit dismissed under Rule 16 of the Rules of Practice of Ninth Circuit, 116 Fed. (2d) 278; *Doris Bond Sherman,* 41 B. T. A. 898; *Amelia Solomon,* 43 B. T. A. 234; *Herzog* v. *Commissioner,* 116 Fed. (2d) 591.

The 1936 edition of Regulations 79 was approved February 26, 1936, and released March 5, 1936. Petitioner primarily rests his case upon article 3 thereof as it existed until amended by T. D. 5010, *supra.* This edition of the regulations was therefore in effect for the year 1937, which was the year involved in *Estate of Giles W. Mead, supra.* And if the property transferred in 1936 in the *Sherman* case was transferred after February 26, 1936, that edition of the regulations would likewise have been the regulations to consider in deciding the effect of the 1936 transfers in the *Sherman* case. Yet in both of these cases we held that our decision was controlled by the *Sanford* case. Petitioner concedes that much to be true, but argues that the controlling effect of the 1936 edition of article 3, Regulations 79, as it existed in 1936 and 1937, was not pressed in the *Mead* and *Sherman* cases as petitioner is doing here. Petitioner, therefore, insists that in deciding the instant proceeding we must give full effect to article 3 as it existed between February 26, 1936, and September 19, 1940, and that T. D. 5010 can not be applied retroactively, citing *Helvering* v. *Reynolds Tobacco Co.,* 306 U. S. 110.

We think petitioner can not prevail in this contention. In *Rasquin* v. *Humphreys, supra,* the Supreme Court commented upon the 1936 edition of article 3 of Regulations 79 in the following language:

\* \* \* Whatever validity the amended regulation of 1936 may have in its prospective operation, we think it is so plainly in conflict with the statute as to preclude its application retroactively so as to subject to tax such transfer as was made by the creation of the trust in 1934. Cf. *Helvering* v. *R. J. Reynolds Tobacco Co.,* 306 U. S. 110.

If the regulation was plainly in conflict with the statute we think it can not be applied either retroactively or prospectively. A regulation which conflicts with the statute is a nullity. *Manhattan General Equipment Co.* v. *Commissioner,* 297 U. S. 129. In that case the taxpayer invoked the regulation in force at the time the transaction there involved occurred, whereas the Commissioner contended that an amended regulation promulgated almost two years later should apply. The case turned entirely upon the question whether a certain loss was to be determined in accordance with the original or amended regulation. The Supreme Court decided that the original regulation was contrary to the intent of the statute, whereas the amended regulation effectuated the legislative intent. The Court then went on to say that a regulation which did not carry into effect the will of Congress as expressed by the statute was a mere nullity. Relative to the retroactive effect of the new regulation, the Supreme Court said:

> The contention that the new regulation is retroactive is without merit. Since the original regulation could not be applied, the amended regulation in effect became the primary and controlling rule in respect of the situation presented. It pointed the way, for the first time, for correctly applying the antecedent statute to a situation which arose under the statute. See *Titsworth* v. *Commissioner of Int. Rev.* (C. C. A.) 73 F. (2d) 385, 386. The statute defines the rights of the taxpayer and fixed a standard by which such rights are to be measured. The regulation constitutes only a step in the administrative process. It does not, and could not, alter the statute. It is no more retroactive in its operation than is a judicial determination construing and applying a statute to a case in hand.

Cf. *Guggenheim* v. *Rasquin,* 312 U. S. 254, where the applicable regulation was "somewhat ambiguous" and the Supreme Court interpreted the statute unaided by an interpretative regulation.

Petitioner has called our attention to the case of *Commissioner* v. *Prouty,* 115 Fed. (2d) 331, and argues that it would seem unjust to tax him upon the powers here released and not to tax the donor in the *Prouty* case upon the powers she released. The *Prouty* case is readily distinguishable from the instant proceeding. There the power reserved by the donor (Trust #1) was in conjunction with one having a substantial adverse interest. In the instant proceeding the reserved power which was released on March 10, 1938, was in the donor alone.

Petitioner also contends that, if the transfers were not complete prior to the release of the powers in question, they were no more complete after the release than they were before, for the reason that petitioner merely shifted the powers reserved by him to the trustees. Under this point petitioner refers to the secondary liability for gift taxes imposed upon donees by section 510 of the Revenue Act of 1932, which provides in part that "If the tax is not paid when due, the donee of any gift shall be personally liable for such tax to the

extent of the value of such gift", and to that part of the Supreme Court's opinion in *Sanford's Estate* v. *Commissioner, supra*, wherein the Court said:

\* \* \* It can hardly be supposed that Congress intended to impose personal liability upon the donee of a gift of property so incomplete that he might be deprived of it by the donor the day after he had paid the tax.

The point here made by petitioner was involved and decided against petitioner's contentions in *Orrin G. Wood, supra*, and *Herzog* v. *Commissioner, supra*. Furthermore, we do not think the Supreme Court ever intended the tests which it applied in the *Sanford* case to be controlling without exceptions. For instance the principal test applied in the *Sanford* case was whether the particular transfer was of a type which would cause the property to be included in the gross estate for estate tax purposes. The Supreme Court recognized that even this test has its exceptions, one of which is a transfer in contemplation of death. Such a transfer would be subject to both estate tax and gift tax, with a credit being given on the estate tax for the gift tax paid. So it is reasonable to suppose that any secondary test which might be applied to determine gift tax liability would also have its exceptions. In any event, as the court said in *Herzog* v. *Commissioner, supra*, we need not now decide whether the trustees or the beneficiaries would be secondarily liable for the tax as donees if the donor failed to pay.

Petitioner's assignments of errors (a) and (b) are not sustained. As to the matters therein contested the Commissioner's determination is approved.

Reviewed by the Board.

*Decision will be entered under Rule 50.*