## CAMP v. COMMISSIONER OF INTERNAL REVENUE.

### No. 4573.

United States Court of Appeals
First Circuit.

April 17, 1952.

Whitman Knapp, New York City (Edwin S. Cohen, Sinclair Hatch, and Hatch, Root, Barrett, Cohen & Knapp, all of New York City, on brief), for petitioner.

L. W. Post, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., and Ellis N. Slack, Sp. Asst. to Atty. Gen., on brief), for respondent.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Frederic E. Camp petitions for review of a decision of the Tax Court entered November 7, 1950, holding that petitioner was deficient in his gift tax for the year 1937 in the amount of $55,737.08, and for the year 1943 in the amount of $1,839.99. Primarily, the issue relates to the year 1937; the Tax Court's determination as to 1937 resulted in an upward revision of the figure for taxpayer's net gifts for the years prior to 1943, and thus, as a mere matter of mathematical computation, in a determination of a deficiency in taxpayer's gift tax liability for other gifts made by him in 1943.

The dispute centers about the effect of a transfer in trust made by the taxpayer in 1932, prior to the enactment of the Revenue Act of 1932, § 501 of which imposed a tax on gifts. 47 Stat. 245, 26 U.S.C.A.Int.Rev.Acts, page 580. Petitioner insists that this transfer in trust was a completed gift of the whole corpus, so that the transaction in its entirety was outside the incidence of the gift tax subsequently enacted. The Tax Court has held, however, that there was no completed gift at all in 1932, because the donor reserved in the deed of trust full power to alter, amend or revoke, in conjunction with his half brother, who, the court concluded, had no "substantial adverse interest" in the trust property; and that there was a completed gift of the whole of the corpus of the trust in 1937, when the trust instrument was amended so as to vest the power of further amendment or revocation in the donor in sole conjunction with the donor's wife, who had a life interest in the trust income.

We are unable to accept altogether either the taxpayer's argument or the conclusion of the Tax Court. This segment of tax law, as to when a transfer in trust is to be deemed a completed gift for purposes of the gift tax, has been in a somewhat cloudy state, as perhaps is evident from the fact that in the present case the Commissioner has taken several successive positions, each asserting a larger deficiency for the years in question.

The case was tried in the Tax Court upon a stipulation of facts, supplemented by a deposition by petitioner which was read into evidence.

On October 30, 1931, the taxpayer married Alida Donnell Milliken. No children have issued from this marriage; but at various dates within the period January 19, 1937, to October 3, 1942, taxpayer and his wife have adopted four children.

On February 1, 1932, taxpayer executed a trust indenture naming Bankers Trust Company of New York as trustee, and transferred to said trustee, as corpus of the trust, securities then having a fair market value of $416,131.72.

The trust instrument provided that the income should be payable to taxpayer's wife Alida during her life, and that upon her death the principal of the trust should be paid to the then living issue of the donor *per stirpes;* and in default of such issue, that the trustee should continue to hold the principal in trust, paying the income therefrom to Johanna R. Bullock, mother of

the donor, during her life, and upon her death, that the trustee should pay the principal of the trust fund unto H. Ridgely Bullock, half brother of the donor, or if he be then dead, unto the then living issue of said H. Ridgely Bullock *per stirpes,* or if there be none, to the trustees of Princeton University.

The tenth article of the trust indenture provided:

"This indenture shall not be subject to revocation, alteration or modification by the Donor, alone, but nevertheless, he may, in conjunction with either H. Ridgely Bullock or Johnanna R. Bullock, beneficiaries hereunder, during the continuance of this trust, by instrument, in writing, executed and acknowledged by the Donor and either the said H. Ridgely Bullock or the said Johnanna R. Bullock, * * * modify or alter in any manner, or revoke in whole or in part, this indenture and the trusts then existing, and the estates and interests in property hereby created. * * *"

When the trust was thus created in February, 1932, taxpayer's wife Alida was 23 years of age, his mother Johnanna R. Bullock was 63, and his half brother H. Ridgely Bullock was 22.

On August 30, 1934, the taxpayer, in conjunction with Ridgely, exercised the power to alter or amend by inserting a provision that Alida, wife of the donor, should receive the income of the trust only so long as she, during the donor's lifetime, should continue to be his wife and to reside with him.

On December 11, 1937, the taxpayer, in conjunction with Ridgely, exercised the amendatory power so as to provide that the term "issue of the Donor", as used in the trust instrument, should be deemed to include any child or children then or thereafter legally adopted by the donor and his said wife, and their issue. At the same time the trust instrument was further modified so as to strike out the above-quoted provision in the tenth article with reference to the power to alter, amend or revoke, and to substitute in lieu thereof a provision containing the same words ex-

cept that the name of Alida Donnell Milliken Camp was substituted for the names of H. Ridgely Bullock and Johnanna R. Bullock. Thus, on and after December 11, 1937, taxpayer reserved the power to alter, amend or revoke the trust in sole conjunction with his wife Alida, who was entitled to all the income from the trust during her lifetime, with the qualification previously stated.

The fair market value of the corpus of the trust, as of December 11, 1937, was $518,089.76.

On June 6, 1946, the taxpayer, in conjunction with his wife Alida, further modified the trust instrument by striking out in its entirety the provision of the tenth article, as amended, dealing with the power to alter, amend or revoke, and substituting in lieu thereof an unqualified provision that the trust indenture "shall not be subject to revocation, alteration or modification."

Section 501(c) of the Revenue Act of 1932 contained the following specific provision:

"The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a transfer by the donor by gift of the property subject to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of such income by gift."

This subsection was repealed in 1934, 48 Stat. 758, for the reason, as explained in the committee reports, that "the principle expressed in that section is now a fundamental part of the law by virtue of the Supreme Court's decision in the Guggenheim case * * *." H.Rep. 704, 73d Cong., 2d Sess. (1934) p. 40; Sen.Rep. 558, 73d Cong., 2d Sess., p. 50. The reference was to Burnet v. Guggenheim, 1933, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, which

involved the tax upon transfers by gift imposed by § 319 of the Revenue Act of 1924, 43 Stat. 313. The Court held, without the aid of any specific language in the statute comparable to § 501(c) of the Revenue Act of 1932, that a deed of trust made in 1917, with a reservation to the grantor alone of the power of revocation, became subject to the gift tax when, in 1925, there was a change of the deed by the cancellation of the power.

It is to be noted that the facts of the Guggenheim case were narrower than the situations specifically covered in § 501(c), in that the Supreme Court was not passing upon the case where the donor did not reserve to himself alone the power of revocation, but vested such power in himself in conjunction with some other person who might or might not have had a substantial adverse interest in the disposition of the property or the income therefrom. However, the committee reports in 1934 expressed the view that this latter situation was covered in principle by the Supreme Court's decision in the Guggenheim case, and therefore recommended the repeal of § 501(c) because it had become unnecessary and superfluous.

What, then, was this "principle" recognized in the Guggenheim case? We think it is to be found in the Court's opinion, 288 U.S. at 286, 53 S.Ct. 369, 371, 77 L.Ed. 748, that the gift tax was not aimed at every transfer of the legal title without consideration, which would include a transfer to trustees to hold for the use of the grantor, but was aimed, rather, "at transfers of the title that have the quality of a gift, and a gift is not consummate until put beyond recall."

Subsequent cases have elaborated upon this concept of a "gift", and have settled that a transfer in trust is incomplete as a gift, not only where the donor reserves the power to revest the trust property in himself, but also where he reserves the power to alter the disposition of the property or the income therefrom in some way not beneficial to himself. Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20; Rasquin v. Humphreys, 1939, 308 U.S. 54, 60 S.Ct. 60,

84 L.Ed. 77. See the discussion in Higgins v. Commissioner, 1 Cir., 1942, 129 F.2d 237.

Treasury Regulations 108 contain the following provisions, which we take to be declaratory of the intent of the Act and of the gloss which later cases have put upon the concept of a "gift" as expressed in Burnet v. Guggenheim:

"§ 86.3. Cessation of donor's dominion and control. * * *

"As to any property, or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave in him no power to change the disposition thereof, whether for his own benefit or for the benefit of another, the gift is complete. But if upon a transfer of property (whether in trust or otherwise) the donor reserves any power over the disposition thereof, the gift may be wholly incomplete, or may be partially incomplete, depending upon all the facts in the particular case. Accordingly, in every case of a transfer of property subject to a reserved power, the terms of the power must be examined and its scope determined.

"A gift is incomplete in every instance where a donor reserves the power to revest the beneficial title to the property in himself. A gift is also incomplete where and to the extent that a reserved power gives the donor the right to name new beneficiaries or to change the interests of the beneficiaries as between themselves. * * *

"A donor shall be considered as himself having the power where it is exercisable by him in conjunction with any person not having a substantial adverse interest in the disposition of the transferred property or the income therefrom. A trustee, as such, is not a person having an adverse interest in the disposition of the trust property or its income.

"The relinquishment or termination of a power to change the disposition of the transferred property, occurring otherwise than by the death of the donor (the statute being confined to

transfers by living donors), is regarded as the event which completes the gift and causes the tax to apply. \* \* \*"

Where a donor makes a transfer in trust for numerous beneficiaries, it is obvious that there may be several distinct gifts or potential gifts. For purposes of the gift tax, some of the interests created may be completed gifts, and others may not be, depending upon the facts of the particular case—as is stated in the first paragraph of the above quotation from § 86.3 of the regulations.

From the foregoing, we think the following propositions are reasonably clear:

■ (1) If the trust instrument gives a designated beneficiary any interest in the corpus of the trust property or of the income therefrom, which is capable of monetary valuation, and the donor reserves no power to withdraw that interest, in whole or in part, except with the consent of such designated beneficiary, then the gift of that particular interest will be deemed to be complete, for the purposes of the gift tax. See accord, our discussion in Commissioner v. Prouty, 1 Cir., 1940, 115 F.2d 331, 334, 131 A.L.R. 977, with reference to the annuities to the husband in Trusts 2 and 3. This is true, though at the time of the creation of the trust there might be extraneous considerations, whether of a pecuniary or sentimental nature, which would give the donor every confidence that such designated beneficiary would acquiesce in any future desire of the donor to withdraw the gift, in whole or in part. See Commissioner v. Prouty, supra at page 335–336. In that respect the donor is taken at his word; he has legally given away something which he cannot take back except with the consent of the donee. The transfer fulfills the concept of a completed gift, quite as much as

if a husband makes an outright gift of securities to his wife, being confident that his wife would reconvey the securities to him if he ever asked for them. If there were an advance agreement between the donor and the donee, prior to the transfer in trust, to the effect that the donee would acquiesce in any future exercise of the power of modification proposed by the donor, then the situation would be different. The trust instrument would not express the true intention of the parties. A real gift is not intended, where the purported donee has agreed ahead of time to hold the "gift" subject to the call and disposition of the purported donor.[1]

■ (2) If the only power reserved by the donor is a power to revoke the entire trust instrument (not a power to modify the trust in any particular), and this power may be exercised only in conjunction with a designated beneficiary who is given a substantial adverse interest in the disposition of the trust property or the income therefrom, then the transfer in trust will be deemed to be a present gift of the entire corpus of the trust, for purposes of the gift tax. In such cases, the gift of the entire corpus will be deemed to have been "put beyond recall" by the donor himself.

■ (3) If the trust instrument reserves to the donor a general power to alter, amend or revoke, in whole or in part, and this power is to be exercised only in conjunction with a designated beneficiary who has received an interest in the corpus or income capable of monetary valuation, then the transfer in trust will be deemed to be a completed gift, for purposes of the gift tax, only as to the interest of such designated beneficiary having a veto over the exercise of the power.[2] As to the in-

1. In the present case, the Tax Court inferred from petitioner's deposition, which was read in evidence, that there was such an advance agreement here between petitioner and his half brother Ridgely. In the view we take, it is unnecessary for us to determine whether such an inference of fact was warranted.

2. This proposition is subject to qualification in the rather unusual situation like that presented by Trust No. 1 in Com-

missioner v. Prouty, C.A.1, 1940, 115 F. 2d 331. There under the terms of the trust instrument, the grantor reserved a power to revoke or amend, with the written consent of her husband. Although the husband was not given the entire beneficial interest in the trust property, nevertheless he did have substantial interests, both in the disposition of the income and in the disposition of the corpus, which were adverse to any

terests of the other beneficiaries, the gifts will be deemed to be incomplete, for as to such interests the donor reserves the power to take them away in conjunction with a person who has no interest in the trust adverse to such withdrawal. The gifts to the other beneficiaries have not been "put beyond recall" by the donor; in such cases the regulation recognizes realistically that when the donor has reserved the power to withdraw any of the donated interests with the concurrence of some third person who has no interest in the trust adverse to such withdrawal, it is in substance the same as if the donor had reserved such power in himself alone. In further support of this proposition, see the discussion in Estate of Sanford v. Commissioner, 1939, 308 U. S. 39, 46–47, 60 S.Ct. 51, 84 L.Ed. 20.

■ Coming back, then, to the terms of the trust which petitioner created in February, 1932: It is clear that there was not at that time a completed gift of the life income to petitioner's wife Alida. Under the original provisions of the trust indenture, this life estate was subject to revocation by the donor in conjunction either with the donor's half brother Ridgely or his mother Johanna, neither of whose interests in the trust were adverse to the withdrawal of the life estate from Alida.

■ When the trust instrument was amended on December 11, 1937, so as to transfer to Alida alone the veto power over any further proposals by the donor for amendment of the trust, there was on that date a completed gift to Alida of the interest which she then held in the trust. It is stipulated that the value on December 11, 1937, of the income of a trust having a principal value of $518,089.76, payable during the life of a woman of 29 (Alida's age), was $356,492.38. However, it is to be noted that Alida did not at this time hold an absolutely unqualified life interest in the income. By prior amendment, the indenture provided that the income of the trust was to be payable to Alida, wife of the donor, only "as long as she, during his lifetime, shall continue to be his wife and

to reside with him". Whether, in the valuation of the gift to Alida on December 11, 1937, some allowance should be made for this qualification upon the life estate, we do not now undertake to say. Cf. Robinette v. Helvering, 1943, 318 U.S. 184, 188, 63 S.Ct. 540, 87 L.Ed. 700. The Tax Court was in error, we think, in ruling that upon the execution of the amendment of December 11, 1937, petitioner made a taxable gift of the whole corpus of the trust, valued then at $518,089.76. There were at that time no completed gifts to the succeeding income beneficiaries and beneficiaries in remainder, for Alida's interest in the trust was not adverse to the donor's revocation of those succeeding interests by an exercise of the reserved power.

■ By the amendment of June 6, 1946, whereby all power to revoke, alter or modify the trust was eliminated, there resulted a taxable gift of the then value of the corpus, minus the sum determined to be the value of the gift to Alida on December 11, 1937, and minus also the values of any completed gifts which may be deemed to have been made at the time of the creation of the trust on February 1, 1932. This latter point we do not have to determine in the present case, because petitioner's liability for the year 1946 is not before us. In passing, we simply allude to a possible difficulty, in that the donor originally reserved a power to revoke or modify the trust in conjunction with either Ridgely or Johanna. Ridgely's contingent remainder interest might have been revoked by the donor, in conjunction with Johanna, whose interest in the trust was not adverse to such revocation. Johanna's contingent life estate could have been revoked by the donor in conjunction with Ridgely, whose interest in the trust was not adverse to such revocation. Where the veto power is thus lodged in the alternative, it may be that, for purposes of the gift tax, there is not a completed gift to either of such beneficiaries. But cf. Estate of Leon N. Gillette, 1946, 7 T.C. 219; Commissioner v. Betts, 7 Cir., 1941, 123 F.2d 534.

modification of the trust other than by way of augmenting the husband's interests. In these circumstances we held

that there had been a completed gift of the entire corpus.

The decision of the Tax Court is vacated, and the case is remanded to that court for further proceedings not inconsistent with this opinion.