**LATTA**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 11181.

United States Court of Appeals Third Circuit.

Argued Feb. 4, 1954.

Decided March 24, 1954.

Stephen T. Dean, Philadelphia, Pa. (C. Brewster Rhoads, Donald McDonald, Philadelphia, Pa., on the brief), for petitioner.

Loring W. Post, Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

GOODRICH, Circuit Judge.

The question in this case is whether the taxpayer is liable for a gift tax for the year 1947. This in turn depends upon whether a gift in trust made by her in 1930 was a final gift in that year or whether its finality was postponed until the later date.

The facts are not difficult. The settlor, then Mrs. Bissell, who was separated from her husband, set up a trust in 1930. Beneficial interest was to herself for life and remainder to the two adopted children of the Bissells. The instrument contained a provision that the trust could be rescinded or changed by the settlor at any time but only with the unanimous consent of the trustees. In 1947 this provision was deleted from the instrument. It is the Commissioner's contention that it was not until this deletion was made that the gift became final and that, as a consequence, gift tax is payable for that year. The Tax Court agreed with this contention, CCH TC Mem.Dec. ¶ 19,686 (1953).

The controversy turns upon the clause in the trust deed just mentioned and upon the effect of Treasury Regulations 108, § 86.3. To focus the controversy the language must be quoted:

"A donor shall be considered as himself having the power [to alter or revoke] where it is exercisable by him in conjunction with any person not having a substantial adverse interest in the disposition of the transferred property or the income therefrom. A trustee, as such, is not a person having an adverse interest in the disposition of the trust property or its income."

There are two questions. One is rather hard; the other rather simple. The first is whether the regulation is to be given effect according to its own language. The second is whether, if the regulation is valid, the trustees of this trust have a sufficient adverse interest to qualify under the terms of the regulation.

Upon the first point the taxpayer's argument is that the regulation is valid only in so far as it may shift to a taxpayer the burden of showing that the trustees are not persons subject to the taxpayer's wishes or demands. This argument is bottomed on counsel's conception of the history of the gift tax statute. When this trust was first set up in 1930 there was no gift tax.[1] Obviously the trust was not set up with any gift tax consequences in mind. In 1932 the tax was re-established and a section of the statute provided for adverse interest in the following terms:

"(c) The tax shall not apply to a transfer of property in trust where the power to revest in the donor title to such property is vested in the donor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such property or the income therefrom, but the relinquishment or termination of such power (other than by the donor's death) shall be considered to be a transfer by the donor by gift of the property subject to such power, and any payment of the income therefrom to a beneficiary other than the donor shall be considered to be a transfer by the donor of

---

[1] There were gift tax provisions in the Act of 1924, 43 Stat. 253, 313–316, which were repealed by the Act of 1926, 44 Stat. 9, 126.

such income by gift." 47 Stat. 169, 245–246, 26 U.S.C.A.Int.Rev.Acts, p. 580.

The regulations for the 1932 Act contained a provision for adverse interest on the part of the trustee almost identical in language with the one under consideration in this case.[2] Following this the Supreme Court decided Burnet v. Guggenheim, 1933, 288 U.S. 280, 53 S. Ct. 369, 77 L.Ed. 748. This case involved only the effect of a reservation of a power to alter or revoke on the part of a settlor alone. It did not involve the question of other persons on whose will, in conjunction with that of a settlor, revocation or alteration depended.

The principle established by this decision is stated by Judge Magruder in Camp v. Commissioner, 1 Cir., 1952, 195 F.2d 999, 1003 as follows:

"What, then, was this 'principle' recognized in the Guggenheim case? We think it is to be found in the Court's opinion, 288 U.S. at [page] 286, 53 S.Ct. 369, 371, 77 L.Ed. 748, that the gift tax was not aimed at every transfer of the legal title without consideration, which would include a transfer to trustees to hold for the use of the grantor, but was aimed, rather, 'at transfers of the title that have the quality of a gift, and a gift is not consummate until put beyond recall.' "[3]

In the 1934 statute, § 501(c) of the 1932 Act was repealed by the Congress, 48 Stat. 680, 758. The committee reports show very clearly why it was omitted. The reason was that the lawmakers felt that the Guggenheim case had covered the point and that the paragraph was unnecessary.[4] The regulation written for the 1932 Act remained virtually unchanged for the Act of 1934, Treas. Regs. 79, Art. 3 (1936), and, as said above, has remained about the same ever since. It is to be noted, however, that the Commissioner did not by the regulation write back into the law what Congress had intended to change. Congress had dropped the provision out of the law because it was felt it was already there without the necessity of express words in the statute. Under these circumstances we do not see how it can be charged that the administrative body is writing into the law something that is not there.

Almost as close a case as one could find on this point is the First Circuit's opinion in Camp v. Commissioner, cited above. This was a case where the settlor's power to revoke or revise was dependent upon the agreement of another

2. "For the purposes of these regulations a donor shall be considered as having the power to revest in himself title to the property transferred in trust where he has such power in conjunction with any person not having a substantial adverse interest in the disposition of the trust property or the income therefrom." Treas.Regs. 79, Art. 3 (1933).

3. Following the Guggenheim case came Estate of Sanford v. Commissioner, 1939, 308 U.S. 39, 60 S.Ct. 51, 84 L.Ed. 20, and Rasquin v. Humphreys, 1939, 308 U.S. 54, 60 S.Ct. 60, 84 L.Ed. 77. Each of these involved powers reserved in the settlor but not such powers as enabled the settlor to bring the trust back into his own beneficiary ownership.

4. This clearly appears from the language which is quoted herewith:

"This section [48 Stat. 758] repeals section 501(c) of the Revenue Act of 1932, since the principle expressed in that section is now a fundamental part of the law by virtue of the Supreme Court's decision in the Guggenheim case (53 S.Ct. 369)." H.R.Rep. No. 704, 73d Cong., 2d Sess. 40 (1934).

"This section [48 Stat. 758] repeals section 501(c) of the Revenue Act of 1932, since the principle expressed in that section is now a fundamental part of the law by virtue of the Supreme Court's decision in the Guggenheim case (53 S.Ct. 369). Your committee made no change in this section of the House bill." Sen.Rep.No.558, 73d Cong., 2d Sess. 50 (1934).

And see Rasquin v. Humphreys, 1939, 308 U.S. 54, 56, 60 S.Ct. 60, 84 L.Ed. 77; Commissioner of Internal Revenue v. Prouty, 1 Cir., 1940, 115 F.2d 331, 333, 133 A.L.R. 977; Camp v. Commissioner, 1 Cir., 1952, 195 F.2d 999, 1002–1003.

without an adverse interest.[5] The court held that the gift did not become complete, as to its tax incidence, until the provision for amendment was relinquished. It said expressly that "the regulation recognizes realistically that when the donor has reserved the power to withdraw any of the donated interests with the concurrence of some third person who has no interest in the trust adverse to such withdrawal, it is in substance the same as if the donor had reserved such power in himself alone." 195 F.2d at page 1005.

We agree with the First Circuit in its very well-stated opinion. The regulation is valid.

 The second and minor point is whether these trustees did have the requisite adverse interest. The trustees were the estranged husband of the settlor, her lawyer and another lawyer who was one of her friends, though not her legal counsel. Of course, if any of the trustees had died or resigned the settlor could have appointed whomever she pleased. Obviously, the settlor's own lawyer and a personal friend will hardly be deemed to have an interest adverse to her wishes. The only argument which can be made on the point is that the estranged husband did have such adverse interest.

This question, of course, turns upon what we mean by an adverse interest. Among definitions in the dictionary are "unpropitious, calamitous, afflictive," and synonyms given are "contrary, opposing, conflicting, disinclined, reluctant, loath." Now Mr. and Mrs. Bissell may have been adverse in one of these senses as a matter of fact. At the time of the creation of the trust they had separated and there was a divorce two years later.

On this question, as in the matter of regulations, the First Circuit has met the problem and blazed the trail. Again quoting Judge Magruder, substantial adverse interest "means a direct legal or equitable interest in the trust property * * *." Commissioner of Internal Revenue v. Prouty, 115 F.2d 331, 335 (1940). Accord, Camp v. Commissioner, supra, 195 F.2d at page 1004.

Mr. Bissell had no substantial interest in this trust property. It is argued that he was anxious to prevent his wife from regaining control of one of the stocks in the trust because he was president of the company of which Mrs. Bissell was a shareholder and he received compensation for that post. But non constat that he would have lost the post if she had got the stock back for she was not a majority shareholder. At any rate, this collateral interest is certainly too remote to be called an interest in the trust res. Mr. Bissell might have been affected by a termination of the trust because of a responsibility for the support of two minor children whom the Bissells had adopted during their marriage. But just how he would have been affected we do not know and any interest which he might have had is too tenuous and remote to be considered an interest in the res.

The conclusion is that the decision of the Tax Court is correct and its decision will be affirmed.

HASTIE, Circuit Judge (dissenting).

The reasoned judgment of this court accords with the position of the Court of Appeals for the First Circuit in the recent case of Camp v. Commissioner, 1952, 195 F.2d 999. I regret that I am not able to agree with the considered views of so many respected colleagues.

The question here is whether within the meaning of the gift tax statute Mrs. Latta, formerly Mrs. Bissell, made a gift of a remainder in trust to her children in 1930 or in 1947. She actually transferred the property in question to trustees in 1930, when there was no federal gift tax, under an indenture making the children remaindermen after a life es-

---

5. The trust in this case had a number of provisions and perhaps the statement in the text oversimplifies its conditions. The problem, as stated, is presented among others.

tate for herself. The indenture provided that "This entire agreement may be rescinded or may be modified in any way at any time by the unanimous consent of all the Trustees and the Donor". What happened in 1947 was that the three trustees and the donor executed a document formally eliminating the quoted provision from the trust instrument. The court says a taxable gift of the remainder occurred when this change was made. I disagree.

For purposes of analysis the starting point and the basic datum is the gift tax statute itself. Its sole relevant provision is this: "For * * * each calendar year * * * a tax * * * shall be imposed upon the transfer during such calendar year by any individual * * * of property by gift. * * * The tax shall apply whether the transfer is in trust or otherwise * * *." Int. Rev.Code § 1000, 26 U.S.C., 1946 ed., § 1000. It is this language which must be construed and applied to determine when the "gift" was made. I do not find that construction doubtful or difficult.

The trust was duly established, and title and possession of the trust estate transferred to the trustees in 1930. Ever since that time the Bissell children have been the remaindermen under that trust. Of course until the 1947 amendment there was a possibility that the remaindermen be divested of what their mother had given them. But there is nothing in the tax statute or accepted judicial construction of it which says that such a possibility postpones the occurrence of a taxable gift. It has been authoritatively decided that no gift occurs so long as the donor either technically or in practical reality has the power to recall the gift if he so desires. If the donor has reserved to himself such a power of recall it is the established rule that the gift occurs when that power is released. Burnet v. Guggenheim, 1933, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748; Cf. Smith v. Shaughnessy, 1943, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690.

But this is not such a case. The donor could not recall the gift. Only the unanimous action of four persons, the three trustees and the donor, could alter or revoke the trust. To lodge power in the four together is very different from investing one alone. This is demonstrated and emphasized by stating still a third case, that in which the trustees alone have the power. This power does not postpone the taxability of the gift. Herzog v. Commissioner, 2 Cir., 1941, 116 F.2d 591; Aldus C. Higgins, 1941, 44 B.T.A. 1123. What can there be about the additional requirement of the donor's consent which would make the transfer less complete and postpone gift taxation on any analogy to a power in the donor alone? In logic, nothing. Cf. Orrin G. Wood, 1939, 40 B.T.A. 905. But there may be a practical consideration. The donor may dominate the group decision. Of course he may also do that without being formally a member of the group which holds the power. But if he formally shares in the exercise of the power it is certainly proper to inquire whether the others are subservient so that the donor in reality is free to shift enjoyment of the ostensible gift as he may see fit. Making such an inquiry here we find it established clearly in the record that Mrs. Latta did not have the power of recall in fact or practical reality any more than she had it in legal theory.

These are the established facts. One of the trustees was Leonard Bissell, who was divorced from the taxpayer in 1932 following a separation which began in 1929 before the trust was executed. A second trustee was Mr. Bissell's attorney. The third was taxpayer's attorney. Explaining to her attorney in 1930 when the trust was being planned why she wanted to require the unanimous vote of this group of four for any alteration of the trust, the taxpayer said:

"I think I know myself better than you do, and I know that the time may come when I may wish to undo what I have done in connection

with this trust. And that is why I want Leonard and Max and yourself as trustees, so that I cannot change my mind and undo what I have done here."

Of course Bissell, the estranged husband, had the most obvious interest in using his power as trustee to preserve the gift to his children and to prevent any action which would take property from them and give it to his former wife, soon remarried. Moreover, he received a substantial part of his income as a salaried officer of the General Drop Forge Co., 36% of the stock of which was in the trust estate. Bissell himself and his attorney, who was cotrustee, also had smaller personal stock holdings in the corporation. Therefore, the trust as originally established placed Bissell in better position to protect his own salaried office. Thus he had two impelling reasons to resist any revocation of the trust and none to acquiesce in such a step. Moreover, the evidence shows without dispute that Mrs. Latta did from time to time suggest revocation but the trustees were against such a step. Finally, convinced that the trustees would not revoke the trust, the donor in 1947 agreed with them upon formal elimination of the group power of revocation.

On these facts I believe we all recognize that in practical effect as well as technically the taxpayer surrendered control and dominion over the remainder interest in the trust estate in 1930. Thus, if the language of the gift tax statute is given normal interpretation we are forced to conclude that there was no gift in 1947.

The contrary conclusion of the Tax Court, adopted by the majority here, depends upon something additional which I have not heretofore mentioned. There is a Treasury Regulation which says:

" * * * A donor shall be considered as himself having the power [to dispose of the trust estate] where it is exercisable by him in conjunction with any person not having a substantial adverse interest in the disposition of the transferred property or the income therefrom. A trustee, as such, is not a person having an adverse interest in the disposition of the trust property or its income. * * * " Treasury Regulations 108, Sec. 86.3.

The court regards this provision as controlling. But in my view it is an unwarranted administrative amendment of the statute. It was justified in the early 1930's because at that time the 1932 tax statute itself contained a provision explicitly postponing gift taxation in cases where power of revocation was shared by the donor and "any person not having a substantial adverse interest in the disposition of such property". 47 Stat. 169, 245. But that provision was repealed in 1934. 48 Stat. 680, 758. Moreover, as the opinion of this court indicates, the legislative history shows that Congress had in mind that after repealer the situation would be controlled by the then recently announced doctrine of Burnet v. Guggenheim, 1933, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748. But that is the landmark decision for judging the time of gift taxation in this area on the basis of the presence or absence of continuing dominion in fact by the donor after the trust is established. As I read the legislative history, that 1933 decision led Congress in 1934 to abandon the 1932 statutory rule of thumb for postponing the gift tax in the conjunctive power cases and leave the courts free to apply a flexible rule of reason. Now the administrative authorities say the courts should not apply the rule of reason because a Treasury Regulation still imposes the repealed rule of thumb. To me this argument is unpersuasive. The regulation is arbitrary. We should disregard it. And, without the regulation, the present gift tax statute, given a normal and reasonable interpretation consistent with the rationale of Burnet v. Guggenheim, and applied in the light of the facts proved in this case, requires a reversal of the decision of the Tax Court.